## MANION v. STATE HIGHWAY COMMISSIONER.

1. STATE—SOVEREIGN IMMUNITY FROM SUIT—CONSENT.
   The State, as sovereign, is immune from suit save as it consents to be sued, and any relinquishment of sovereign immunity must be strictly interpreted.

2. SAME—SOVEREIGN IMMUNITY FROM LIABILITY—GOVERNMENTAL FUNCTION.
   Sovereign immunity from liability exists when the sovereign is engaged in a governmental function.

3. SAME—SOVEREIGN IMMUNITY FROM SUIT—WAIVER—IMMUNITY FROM LIABILITY.
   Sovereign immunity from suit may be waived without waiving sovereign immunity from liability.

4. SAME—GOVERNMENTAL FUNCTION—IMMUNITY FROM LIABILITY— COURT OF CLAIMS.
   Under provision of the court of claims act that it should in no manner be construed as enlarging the present liabilities of the State, the State's immunity from liability while engaged in a governmental function is preserved because the waiver of such defense would enlarge the present liabilities of the State (Act No. 135, § 24, Pub. Acts 1937).

5. COURTS—COURT OF CLAIMS—JURISDICTION.
   The court of claims under the provisions of the act creating it has exclusive jurisdiction of claims and demands against the State, liquidated and unliquidated, ex contractu and ex delicto, previously determined by the board of State auditors and State administrative board (Const. 1908, art. 6, § 20; 1 Comp. Laws 1929, §§ 201, 237, 238; Act No. 135, § 8, Pub. Acts 1939).

6. SAME—JURISDICTION—ACTION AGAINST STATE—CONSENT.
   The terms of the State's consent to be sued in any court define that court's jurisdiction to entertain the suit.

* Continued from Vol. 302.
Jurisdiction over a sovereign, domestic or foreign, or over its property, see Restatement, Judgments, § 5, comment k.
That state or other sovereign can consent to be a party, see Restatement, Judgments, § 78, comment d.

7. SAME—POWERS—RESTRICTIONS.

The court of claims is a legislative and not a constitutional court and derives its powers only from the act of the legislature and subject to the limitations therein imposed (Act No. 135, Pub. Acts 1939).

8. STATE—COURT OF CLAIMS—AVAILABLE DEFENSES.

Since the existing liabilities of the State were not enlarged by the court of claims act, all those defenses which might have been interposed in actions at law and chancery remain unchanged save only the immunity from suit (Act No. 135, § 24, Pub. Acts 1939).

9. HIGHWAYS AND STREETS—FERRIES—GOVERNMENTAL FUNCTION.

In operating the State ferry across the Straits of Mackinac as a part of the highway system, the State was performing a governmental function (1 Comp. Laws 1929, § 4598).

10. STATE—GOVERNMENTAL FUNCTION—MARITIME TORT.

The defense of immunity from liability in the performance of a governmental function remains in action *ex delicto* against the State brought in court of claims for injuries sustained by plaintiff, a seaman in employ of defendant State highway commissioner, while he was off duty and standing on main deck of ferry which collided with another ferry owned by defendant (1 Comp. Laws 1929, § 4598; Act No. 135, §§ 8, 24, Pub. Acts 1939).

11. COURTS—COURT OF CLAIMS—JURISDICTION—ADMIRALTY.

The court of claims does not possess the jurisdiction of a court of admiralty (Act No. 135, § 8, Pub. Acts 1939).

12. STATE—JUDGMENT.

The State does not have a general capacity to stand in judgment.

13. SAME — MARITIME TORT — CONSENT TO SUIT — UNITED STATES COURTS.

The State has not waived its immunity from suit for a maritime tort in the courts of the United States.

CHANDLER, C. J., and STARR, J., dissenting.

Appeal from Court of Claims; Holland (H. Russel), J., presiding. Submitted April 15, 1942. (Docket No. 24, Calendar No. 41,909.) Decided September 8, 1942. Petition for certiorari to Supreme Court of Michigan denied by Supreme Court of the United States November 9, 1942.

Claim by Luke Manion against State of Michigan and State Highway Commissioner for personal injuries sustained in a collision between steamboats. Claim denied. Plaintiff appeals. Affirmed.

*Edward T. Kane* and *DePuy & George* (*Eugene F. Black,* of counsel), for plaintiff.

*Herbert J. Rushton,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Meredith H. Doyle* and *Daniel J. O'Hara,* Assistants Attorney General, for defendants.

CHANDLER, C. J. (*dissenting*). On June 8, 1939, plaintiff and appellant herein was a seaman in the employ of the defendant, State highway commissioner, as chief engineer of a steam vessel, known as the St. Ignace, owned and operated by the State of Michigan, which vessel was engaged in ferrying vehicles, freight and passengers across the Straits of Mackinac from St. Ignace to Mackinaw City pursuant to the provisions of Act No. 106, Pub. Acts 1923, as last amended by Act No. 138, Pub. Acts 1935 (1 Comp. Laws 1929, § 4598 *et seq.,* as amended [Comp. Laws Supp. 1940, § 4598 *et seq.,* Stat. Ann. and Stat. Ann. 1941 Cum. Supp. § 9.1391 *et seq.*]). While plaintiff was off duty and standing on the main deck of said vessel, which was then and there on a voyage across said straits, the boat collided with another vessel known as City of Cheboygan which was owned, controlled and operated by the State for the same purpose as the St. Ignace, which collision resulted in injuries to plaintiff.

On June 7, 1941, plaintiff filed a statement of his claim in the court of claims pursuant to Act No. 135, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 13862–1 *et seq.,* Stat. Ann. 1940 Cum. Supp. § 27.3548 (1) *et seq.*). In said claim, he alleged that

he was free from negligence and that the collision and resulting injuries were caused solely by the negligence of the officers and navigating seamen of both vessels.

The statement of claim specifically sets up and relies upon the general maritime law and "the statutes of the United States relating to navigation and liability of steam vessel owners and operators for negligently inflicted injuries to seamen," and asks judgment against defendants in a large amount as damages for the injuries resulting from the collision.

On June 11, 1941, defendants filed the following motion to dismiss:

"Now come defendants, State of Michigan and G. Donald Kennedy, Michigan State highway commissioner, by Herbert J. Rushton, attorney general of the State of Michigan, and Meredith H. Doyle, assistant attorney general, their attorneys, and move the court now here that the petition herein be dismissed for the reason that said petition does not state a cause of action against said defendants, or either of them, in that said defendants at the time and place of the grievances set forth in said petition were engaged in the performance of a governmental function and are not liable for the alleged negligent or tortious acts of such officers, agents or employees."

The motion was granted by the court of claims and this appeal followed.

Inasmuch as the question before us is to determine whether the court of claims erred in granting the motion to dismiss, we must assume that the allegations in plaintiff's statement of claim are true.

We think appellant's "statement of questions involved" fairly states the issues to be determined on this appeal. They are as follows:

"1. Where, by reason of consent to be sued therein, a specified court has jurisdiction to hear

and determine tort claims against a sovereign
State, and where suit is brought in that court against
such State for commission of a marine tort, does the
local law as distinguished from the maritime law
control in determining whether the defendant State
possesses a defense of immunity from liability which
is based on the doctrine of 'governmental function'?

"2.   Where a sovereign State has consented to be
sued, in a specified court having jurisdiction 'to hear
and determine all claims and demands, liquidated
and unliquidated, *ex contractu* and *ex delicto,* against
such State and any of its departments, commissions,
boards, institutions, arms, or agencies,' and where
by the act of consent that State reserves unto itself
such defenses as it might always have relied upon
if suable: Is that State liable in such court, under
the maritime law as enlarged by the Jones act of
congress, to a seaman who is injured by and through
a marine tort committed by a department of that
State in the course of statutory marine operations on
the Great Lakes?"

If plaintiff has a remedy for injuries received by
him in his employment by defendants as set forth
in his claim, we hold that the liability of defendants
must be bottomed on the Jones act (46 USCA, § 688),
the relevant provisions thereof being as follows:

"Any seaman who shall suffer personal injury in
the course of his employment may, at his election,
maintain an action for damages at law, with the
right of trial by jury, and in such action all statutes
of the United States modifying or extending the
common-law right or remedy in case of personal in-
jury to railway employees shall apply.   *   *   *
Jurisdiction in such actions shall be under the court
of the district in which the defendant employer re-
sides or in which his principal office is located."

The statute relative to injuries to railway em-
ployees referred to in and made applicable by the

foregoing quoted provisions is 45 USCA, § 56, which provides in part:

"Under this chapter an action may be brought in a district court of the United States, in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be doing business at the time of commencing such action. The jurisdiction of the courts of the United States under this chapter shall be concurrent with that of the courts of the several States, and no case arising under this chapter and brought in any State court of competent jurisdiction shall be removed to any court of the United States."

Appellant contends that the State, "whatever its defenses may be or may have been in a nonmaritime case, is to be treated and considered on consent to be sued for a maritime tort exactly as any maritime tortfeasor is treated and considered in the admiralty courts of the United States. The essential consent to be sued having been granted, the State's liability in such case is to be measured and determined by Federal statutes and navigation rules which, insofar as maritime operations on the Great Lakes are concerned, admit of and brook no State interference. In a word a State is just as liable for commission of a maritime tort as any other marine carrier is, subject only to the essential consent to suit. With consent to be sued granted, or with immunity from suit waived, liability for a marine tort attaches even though the particular tortfeasor happens to be a suit-consenting State."

Article 11 of the amendments to the Constitution of the United States provides:

"The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by citizens or subjects of any foreign State."

This provision is a bar to a suit against the State in a court of admiralty for a marine tort. However, such immunity may be waived.

Appellees contend:

"First: This State has not yet surrendered its sovereign immunity from liability 'for injuries caused by the negligence of its officers, agents, or employees while in the performance of their duties in the exercise of a governmental function.'

"(1) Although the legislature may waive the State's exemption from such liability, the intent so to do must appear in clear and unambiguous language, and a general statute authorizing suits against the State does not necessarily permit a recovery for negligence and its resulting injury.

"(2) The Michigan court of claims act, while permitting the State to be sued, does not waive sovereign immunity from such liability.

"Second: Under the 11th amendment, an admiralty suit *in personam* cannot be brought against a State, without its consent, by an individual, whether a citizen of the State or not.

"While local laws may not change the maritime law of the nation, and admiralty and common-law courts seem to have concurrent jurisdiction of suits *in personam,* * * * this does not mean that, upon the trial of a personal injury case brought against the State in a local court established by her legislature, the maritime law can successfully be invoked for the purpose of destroying the State's sovereignty.

"Third: The maritime law, if applicable, does not bar the defense of State sovereign immunity from liability for the tort of a servant of the State."

Defendants further contend that although the Michigan court of claims established by the legislature has exclusive jurisdiction to hear and determine all claims and demands against the State, provided that the act "shall in no manner be construed

as enlarging the present liabilities of the State," said State has not expressly surrendered or waived its immunity against suit on a maritime tort, or its immunity from liability to respond in damages for the negligent acts of its officers, agents or employees.

Act No. 135, § 8, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 13862-8, Stat. Ann. 1940 Cum. Supp. § 27.3548 [8]), is the provision applicable hereto and reads in part as follows:

"Except as provided in section 14 [13?] of this act, the jurisdiction of the court of claims as conferred upon it by this act over claims and demands against the State or any of its departments, commissions, boards, institutions, arms or agencies, shall be exclusive. The court shall have power and jurisdiction:

"1. To hear and determine all claims and demands, liquidated and unliquidated, *ex contractu* and *ex delicto,* against the State and any of its departments, commissions, boards, institutions, arms or agencies."

We can conceive of no act by a legislative body that could more definitely and emphatically constitute a waiver of sovereign immunity than the one under consideration. We call particular attention to this language: "the jurisdiction of the court of claims as conferred upon it by this act over *claims and demands* against the State or any of its departments, commissions, boards, institutions, arms or agencies, shall be exclusive. The court shall have power and jurisdiction: 1. To hear and determine *all claims and demands, liquidated and unliquidated, ex contractu and ex delicto, against the State and any of its departments, commissions, boards, institutions, arms or agencies.*"

With the wisdom of this legislation we are not concerned. Its effect is for our determination.

The right of the legislature to create courts inferior to that of the Supreme Court cannot be questioned.   Such power is expressly granted by Michigan Constitution of 1908, art. 7, § 1, which provides:

"The judicial power shall be vested in one Supreme Court, circuit courts, probate courts, justices of the peace and such other courts of civil and criminal jurisdiction, inferior to the Supreme Court, as the legislature may establish by general law, by a two-thirds vote of the members elected to each house."

We must conclude that the State of Michigan, by its legislative body, has waived that immunity from suit belonging to it as a sovereign State, and has expressly elected to stand in judgment in all actions wherein its legal liability is determined in the court of claims established by it.

"The immunity from suit belonging to a State, which is respected and protected by the Constitution within the limits of the judicial power of the United States, is a personal privilege which it may waive at pleasure; so that in a suit, otherwise well brought, in which a State had sufficient interest to entitle it to become a party defendant, its appearance in a court of the United States would be a voluntary submission to its jurisdiction."   *Clark* v. *Barnard,* 108 U. S. 436, 447 (2 Sup. Ct. 878, 27 L. Ed. 780).

"Although a State may not be sued without its consent, such immunity is a privilege which may be waived, and hence where a State voluntarily becomes a party to a cause and submits its rights for judicial determination, it will be bound thereby and cannot escape the result of its own voluntary act by invoking the prohibitions of the Eleventh Amendment." *Gunter* v. *Atlantic Coast Line Railroad Co.,* 200 U. S. 273, 284 (26 Sup. Ct. 252, 50 L. Ed. 477).

"The first question is whether the State has waived the immunity it now claims.   Immunity from suit under the Eleventh Amendment is a personal

privilege which may be waived." *State of Missouri v. Fiske,* 290 U. S. 18, 24 (54 Sup. Ct. 18, 78 L. Ed. 145).

To the foregoing authorities might be added innumerable others from the Federal courts and the courts of last resort in the many States where sovereign immunity from suit has been waived. See 25 R. C. L. pp. 412–417; *Washington & Pacific Hypotheek Bank v. State,* 18 Wash. 73 (50 Pac. 586, 42 L. R. A. 33 and note); 59 C. J. p. 300 *et seq.,* and cases cited.

According to the claim filed in the instant case, defendants by the officers and seamen of the St. Ignace and City of Cheboygan, in the course of their employment, committed a maritime tort which was the proximate cause of serious injuries to plaintiff, which, but for the immunity granted by the Eleventh Amendment of the Constitution of the United States, would have subjected defendants to an action by plaintiff in the Federal court or in one of the circuit courts of this State at his election.

The State as a defendant by its legislative body in express terms waived its sovereign immunity from suit and established a court of claims with exclusive jurisdiction to hear and determine, on the merits, this claim or demand and all other claims and demands, "liquidated and unliquidated, *ex contractu* and *ex delicto,* against the State and any of its departments, * * * or agencies," and thus subjected itself to suit for violation of maritime laws committed on navigable waters within the State of Michigan by it or any of its agencies in a court of its own selection.

Appellees claim that section 24 of the court of claims act (Comp. Laws Supp. 1940, § 13862-24, Stat. Ann. 1941 Cum. Supp. § 27.3548 [24]) is a bar to

the right of plaintiff to maintain his action because to permit recovery would be to enlarge the "present" liabilities of the State. This section provides:

"This act shall in no manner be construed as enlarging the present liabilities of the State and any of its departments, commissions, boards, institutions, arms or agencies."

They further claim that the State has not expressly surrendered or waived its immunity against suit for a maritime tort.

While a statute authorizing suit against a State may be so framed as to waive a defense or give a claimant a substantive right he would not otherwise have, statutes which merely give a State's consent to be sued, as in this instance, do not operate as an admission of liability or create a cause of action in favor of the plaintiff, but merely give a remedy to enforce a preexisting right and submit the State to the jurisdiction of the court established by it, subject to all lawful defenses in its behalf. Since a State may withhold its consent entirely, when it grants the same, it may impose such conditions and limitations as it desires, but in the instant case its grant of consent is unconditional and unlimited, with the exception that such claim or demand shall be prosecuted in the court of claims established by it and that the jurisdiction of said court shall be exclusive.

We, therefore, conclude that the grant of consent by the State to be sued does not enlarge the "present" liabilities of the State or any of its departments or agencies.

Having concluded that the court of claims has exclusive jurisdiction to hear and determine all claims and demands *ex contractu* and *ex delicto* against the

State, the question that arises is: Does this include demands arising from maritime torts committed by the State or its agencies? Our answer is in the affirmative. Over any maritime tort committed within the territorial boundaries of the State of Michigan, by the State or any of its agents or agencies, the court of claims is vested with exclusive jurisdiction. There is no other forum in which plaintiff can seek relief and no other court in which the State is required to appear.

We are persuaded after a careful review of the case of *Workman* v. *New York City*, 179 U. S. 552 (21 Sup. Ct. 212, 45 L. Ed. 314), and numerous other opinions of the United States supreme court that the determination of defendants' liability in the instant case must be controlled solely by the maritime law.

Workman, the plaintiff in the above-cited case, was the owner of a vessel moored to a dock in East River in New York City, and while there the vessel was struck and damaged by a steam fire vessel, owned by defendant and which was engaged in aiding to extinguish a fire in a warehouse near the river front. Action was instituted in the Federal district court, and upon trial, the court found that the damage to plaintiff's vessel was caused by the negligent management of the fireboat. Judgment was rendered against the city and one Gallagher who was in charge of the navigation of the fire boat. *Workman* v. *New York City*, 63 Fed. 298. On appeal, the circuit court of appeals affirmed the judgment as to Gallagher and released the city from liability, but approved the finding of the district court as to the cause of the injuries. *New York City* v. *Workman*, 14 C. C. A. 530 (67 Fed. 347). On appeal to the supreme court, the findings and conclusions of the district court were affirmed.

The fire department of the city of New York, as constituted when the collision occurred, was established by New York Laws of 1882, chap. 410. In that statute, it was declared that "for all purposes the local administration and government of the city and county of New York shall continue to be in and be performed by the corporation aforesaid." Provision was made for a board of fire commissioners to act as the executive head of the department, to be appointed by the mayor with the approval of the board of aldermen. The ministerial direction of the affairs of the department was confided to this board of commissioners but the city was made liable for all expenses of operation and maintenance and was the owner of all the property of the fire department.

In the prevailing opinion of the court, Justice White said:

"That, upon such a state of things, the relation of master and servant existed between the city of New York and those in charge of the fireboat is clear. And that under the general maritime law, where the relation of master and servant exists, an owner of an offending vessel committing a maritime tort is responsible, under the rule of *respondeat superior*, is elementary. *Thorp* v. *Hammond* (1871), 12 Wall. (79 U. S.) 408 (20 L. Ed. 419); *The Plymouth* (1866), 3 Wall. (70 U. S.) 35 (18 Law. Ed. 125)."

The decision of the United States supreme court in the *Workman Case* is in direct conflict with the holdings of the court of last resort of the State of New York. This is apparent from the dissenting opinion in that case wherein Justice Gray said:

"In the Court of Appeals of the State of New York, the law has long been settled that a municipal corporation having a charter from the State, which requires it to construct and maintain highways and bridges, is liable to a person suffering injury in per-

son or property by a defect in the construction or repair of either by the negligence of the commissioner of highways. *Hutson* v. *New York* (1853), 9 N. Y. 163 (59 Am. Dec. 526); *Conrad* v. *Village of Ithaca* (1857), 16 N. Y. 158, 161; *Requa* v. *City of Rochester* (1871), 45 N. Y. 129 (6 ·Am. Rep. 52); *Hume* v. *New York* (1878), 74 N. Y. 264; *Ehrgott* v. *New York* (1884), 96 N. Y. 264 (48 Am. Rep. 622); *Hughes* v. *County of Monroe* (1895), 147 N. Y. 49, 57 (41 N. E. 407, 39 L. R. A. 33); *Missano* v. *New York* (1899), 160 N. Y. 123 (54 N. E. 744).

"But that court has constantly held otherwise in regard to negligence of members of the fire department, the police department, or even of the department of public charities, of public health, or of public instruction.

"In *Maxmilian* v. *New York* (1875), 62 N. Y. 160 (20 Am. Rep. 468), which has always been considered a leading case, Judge Folger, delivering the unanimous judgment of the court, said: 'There are two kinds of duties which are imposed upon a municipal corporation: One is of that kind which arises from the grant of a special power, in the exercise of which the municipality is as a legal individual; the other is of that kind which arises, or is implied, from the use of political rights under the general law, in the exercise of which it is as a sovereign. The former power is private, and is used for private purposes; the latter is public, and is used for public purposes. The former is not held by the municipality as one of the political divisions of the State; the latter is. In the exercise of the former power, and under the duty to the public which the acceptance and use of the power involves, a municipality is like a private corporation, and is liable for a failure to use its power well, or for an injury caused by using it badly. But where the power is intrusted to it as one of the political divisions of the State, and is conferred not for the immediate benefit of the municipality, but as a means to the exercise of the sovereign power for

the benefit of all citizens, the corporation is not liable for nonuser nor for misuser by the public agents.' "

On this branch of the case, Justice White, in the prevailing opinion, said:

"The contention is, although the corporation had general capacity to stand in judgment, and was therefore subject to the process of a court of admiralty, nevertheless the admiralty court would afford no redress against the city for the tort complained of, because under the local law the corporation as to some of its administrative acts was entitled to be considered as having a dual capacity, one private, the other public or governmental, and as to all maritime wrongs committed in the performance of the latter functions it should be treated by the maritime law as a sovereign. But the maritime law affords no justification for this contention, and no example is found in such law, where one who is subject to suit and amenable to process is allowed to escape liability for the commission of a maritime tort, upon the theory relied upon. We, of course, concede that where maritime torts have been committed by the vessels of a sovereign, and complaint has been made in a court of admiralty, that court has declined to exercise jurisdiction, but this was solely because of the immunity of sovereignty from suit in its own courts. So, also, where in a court of admiralty of one sovereign, redress is sought for a tort committed by a vessel of war of another nation, it has been held that as by the rule of international comity the sovereign of another country was not subject to be impleaded, no redress could be given. Both of these rules, however, proceed upon the hypothesis of the want of a person or property before the court over whom jurisdiction can be exerted. As a consequence, the doctrine above stated rests not upon the supposed want of power in courts of admiralty to redress a wrong committed by one over whom such courts have adequate jurisdiction, but alone on their inability to give redress in a case where jurisdiction

over the person or property cannot be exerted. In other words, the distinction between the two classes of cases is that which exists between the refusal of a court to grant relief because it has no jurisdiction to do so, and the failure of a court to afford redress in a case where the wrong is admitted and jurisdictional authority over the wrongdoer is undoubted.''

Justice White also said:

''It results that, in the maritime law, the public nature of the service upon which a vessel is engaged at the time of the commission of a maritime tort affords no immunity from liability in a court of admiralty, where the court has jurisdiction. This being so, it follows that as the municipal corporation of the city of New York, unlike a sovereign, was subject to the jurisdiction of the court, the claimed exemption from liability asserted in the case at bar, because of the public nature of the service upon which the fire-boat was engaged—even if such claim for the purposes of the case be conceded—was without foundation in the maritime law, and therefore afforded no reason for denying redress in a court of admiralty for the wrong which the courts below both found to have been committed.''

The following passage by Justice McReynolds in *Knickerbocker Ice Co.* v. *Stewart,* 253 U. S. 149, 160, 166 (40 Sup. Ct. 438, 64 L. Ed. 834, 11 A. L. R. 1145), we deem particularly applicable here because the court was dealing with the rights and liabilities arising from maritime employment:

''As the plain result of these recent opinions and the earlier cases upon which they are based, we accept the following doctrine; The Constitution itself adopted and established, as part of the laws of the United States, approved rules of the general maritime law and empowered Congress to legislate in respect of them and other matters within the admiralty and maritime jurisdiction. Moreover, it took

from the States all power, by legislation or judicial decision, to contravene the essential purposes of, or to work material injury to, characteristic features of such law or to interfere with its proper harmony and uniformity in its international and interstate relations. * * *

"Obviously, if every State may freely declare the rights and liabilities incident to maritime employment, there will at once arise the confusion and uncertainty which framers of the Constitution both foresaw and undertook to prevent."

We also call attention to the language of Chief Justice Hughes in *Minnie* v. *Port Huron Terminal Co.*, 295 U. S. 647 (55 Sup. Ct. 884, 79 L. Ed. 1631), affirming the case reported in 269 Mich. 295, wherein he said:

"We have held that the case of an employee injured upon navigable waters while engaged in a maritime service is governed by the maritime law."

Additional cases which are applicable to the question under consideration are *Southern Pacific Co.* v. *Jensen,* 244 U. S. 205 (37 Sup. Ct. 524, 61 L. Ed. 1086); *Chelentis* v. *Luckenbach Steamship Co., Inc.,* 247 U. S. 372 (38 Sup. Ct. 501, 62 L. Ed. 1171, 19 N. C. C. A. 309); *Ex parte In the Matter of the State of New York,* 256 U. S. 490 (41 Sup. Ct. 588, 65 L. Ed. 1057); *Grant-Smith-Porter Ship Co.* v. *Rohde,* 257 U. S. 469 (42 Sup. Ct. 157, 66 L. Ed. 321, 25 A. L. R. 1008); *Parker* v. *Motor Boat Sales, Inc.,* 314 U. S. 244 (62 Sup. Ct. 221, 86 L. Ed. 184). See, also, *Sullivan* v. *Pittsburgh Steamship Co.,* 230 Mich. 414.

In *Arizona* v. *Anelich,* 298 U. S. 110, 123 (56 Sup. Ct. 707, 80 L. Ed. 1075), the court said:

"Like considerations, and others to be mentioned, require a like conclusion with respect to the modified and in some respects enlarged liability imported into

the maritime law by the Jones act. The legislation was remedial, for the benefit and protection of seamen who are peculiarly the wards of admiralty. Its purpose was to enlarge that protection, not to narrow it. Cf. *Chelentis* v. *Luckenback Steamship Co., Inc.,* 247 U. S. 372 (38 Sup. Ct. 501, 62 L. Ed. 1171, 19 N. C. C. A. 309). Its provisions like others of the merchant marine act (41 Stat. 988), of which it is a part, are to be liberally construed to attain that end, * * * and are to be interpreted in harmony with the established doctrine of maritime law of which it is an integral part."

In *Engel* v. *Davenport,* 271 U. S. 33 (46 Sup. Ct. 410, 70 L. Ed. 813), the court said:

"It is clear that the State courts have jurisdiction, concurrently with the Federal courts, to enforce the right of action established by the merchant marine act as a part of the maritime law."

The intent to waive sovereign immunity by the State of Michigan from suits and actions, providing the same are instituted in the court of claims established by the legislative enactment, is too clearly expressed therein to require further discussion.

It is conceded by defendants in their motion to dismiss and the brief that the present action involves a maritime tort. The authorities are clear that plaintiff's rights and defendants' liability are governed by the maritime law.

The court of claims was in error in granting the motion to dismiss and in the entry of judgment for defendants.

We are not determining by this opinion that all defenses heretofore available to the State are not now available in actions *ex contractu* and *ex delicto,* excepting the defense of sovereign immunity from suit which is no longer permissible in any action or suit that may be instituted in the court of claims created by the statute heretofore cited.

The judgment should be reversed and the case remanded with direction to defendants to plead within the usual time.  Plaintiff should have costs.

STARR, J., concurred with CHANDLER, C. J.

BUSHNELL, J.  I am unable to concur in the opinion proposed by the Chief Justice in this case for the following reasons:

The State, as sovereign, is immune from suit save as it consents to be sued, and any relinquishment of sovereign immunity must be strictly interpreted. *United States* v. *Sherwood,* 312 U. S. 584 (61 Sup. Ct. 767, 85 L. Ed. 1058) (decided March 31, 1941), and see authorities therein cited.

There is a distinction between sovereign immunity from suit and sovereign immunity from liability. The latter exists when the sovereign is engaged in a governmental function.  The former may be waived without a waiver of the latter.  Section 24 of the court of claims act (Act No. 135, Pub. Acts 1939 [Comp. Laws Supp. 1940, § 13862–1 *et seq.,* Stat. Ann. 1940 Cum. Supp. § 27.3548 (1-24)]) reads:

"This act shall in no manner be construed as enlarging the present liabilities of the State and any of its departments, commissions, boards, institutions, arms or agencies."

I construe this to mean that the State's immunity from liability while engaged in a governmental function is preserved because the waiver of this defense would enlarge the "present liabilities of the State."

The Constitution of 1908, art. 6, § 20, provides that the board of State auditors "shall examine and adjust all claims against the State not otherwise provided for by general law."  In 1921 the legislature created the State administrative board (see 1 Comp.

Laws 1929, § 201 [Stat. Ann. § 3.261]), and in 1925 authorized this board to determine claims for "any injury or damage by reason of negligence in the construction, improvement or maintenance of any trunk line highway," et cetera. (See 1 Comp. Laws 1929, § 238 [Stat. Ann. § 3.381]). In 1929 the same board was "vested with discretionary power and authority to hear, consider and determine claims presented to said board against the State of Michigan, arising from or by reason of negligence, malfeasance or misfeasance of any State officer, employee," et cetera, "and to allow same and order payment thereof," et cetera. (See 1 Comp. Laws 1929, § 237 [Stat. Ann. § 3.371].)

The "court of claims" act, *supra,* did not specifically repeal 1 Comp. Laws 1929, § 238 (Stat. Ann. § 3.381), or 1 Comp. Laws 1929, § 237 (Stat. Ann. § 3.371), but did, except as to existing adequate remedies in the Federal courts (section 13) confer upon the new court of claims *exclusive jurisdiction* "over claims and demands against the State or any of its departments, commissions, boards, institutions, arms or agencies." (Section 8.) In short, a "court of claims" was substituted by the legislature for the "board of State auditors" and the "State administrative board" for the purpose of hearing and determining "all claims and demands, liquidated and unliquidated, *ex contractu* and *ex delicto* against the State," et cetera. (See section 8 of the act.)

The terms of the State's consent to be sued in any court define that court's jurisdiction to entertain the suit. *United States* v. *Sherwood, supra.* The "court of claims" is a legislative and not a constitutional court and derives its powers only from the act of the legislature and subject to the limitations therein imposed. The existing liabilities of the State were

not enlarged by the court of claims act. (See section 24 thereof.)    All those defenses which might have been interposed in actions of law and chancery remain unchanged save only the immunity from suit.

In 1923 the duty was imposed on the State highway commissioner to operate "a ferry line as a part of the highway system of the State across the Straits of Mackinac for the purpose of transporting vehicles, freight and passengers between the upper and lower peninsulas."    See 1 Comp. Laws 1929, § 4598 (Stat. Ann. § 9.1391).

In operating the State ferry as a part of the highway system, the State was performing a governmental function.    *Longstreet* v. *County of Mecosta,* 228 Mich. 542.    That defense to this action *ex delicto* remained because the act "shall in no manner be construed as enlarging the present liabilities of the State."

The State is not liable in this instance because of its sovereign immunity from liability in the performance of a governmental function and not because of its sovereign immunity from suit.

The Chief Justice holds that the reasoning of *Workman* v. *New York,* 179 U. S. 552 (21 Sup. Ct. 212, 45 L. Ed. 314), is applicable.    That five-to-four decision rendered by the United States supreme court in 1900, after argument in 1897 and reargument in 1899, is of doubtful value even in the field of municipal law, and should be limited to actions on maritime torts against those municipalities which, like the city of New York, have the capacity to sue and be sued.    The majority opinion reads:

"As a result of the general principle by which a municipal corporation has the capacity to sue and be sued, it follows that there is no limitation taking such corporation out of the reach of the process of a court of admiralty, as such courts, within the limit

of their jurisdiction, may reach persons having a general capacity to stand in judgment.''

The court of claims, by the limitations expressed in the act creating this court, does not possess the jurisdiction of a court of admiralty; nor does the State have ''a general capacity to stand in judgment.'' I prefer to follow the reasoning of Mr. Justice Gray in the *Workman Case,* who with Mr. Justice Brewer, Mr. Justice Shiras, and Mr. Justice Peckham dissented. His opinion says, in discussing the liability of municipal corporations:

''But that in a State where, as in Michigan, its highest court holds that a municipal corporation is not liable to such an action, no such action will lie in the circuit court of the United States, because as was said by Mr. Justice Brewer in delivering judgment, the question is not one of general commercial law, it is purely local in its significance and extent. *Detroit* v. *Osborne* (1890), 135 U. S. 492 (10 Sup. Ct. 1012, 34 L. Ed. 260, 262).''

In view of the court's unanimous opinion in the *Osborne Case, supra,* the *Workman Case* is not authority for recovery on a maritime tort in the court of claims against the State of Michigan. Nor has the State waived its immunity from suit for a maritime tort in the courts of the United States.

The order of the circuit judge, presiding in the court of claims, dismissing plaintiff's claim, is affirmed, with the costs provided for in the act.

BOYLES, NORTH, BUTZEL, and SHARPE, JJ., concurred with BUSHNELL, J. WIEST, J., took no part in this decision.