# STATE OF MICHIGAN

# COURT OF APPEALS

MELISSA MAYS, MICHAEL ADAM MAYS, JACQUELINE PEMBERTON, KEITH JOHN PEMBERTON, ELNORA CARTHAN, RHONDA KELSO, BRANDYN CARPENTER, JESSE CARPENTER, KIMBERLY CARPENTER, ADAM MURPHY, CHRISTINA MURPHY, and MICHAEL SNYDER,

UNPUBLISHED
May 8, 2018

Plaintiffs-Appellees,

v

No. 338609
Court of Claims
LC No. 17-000066-MZ

GOVERNOR, STATE OF MICHIGAN, and ANDY DILLON,

Defendants-Appellants.

Before: SHAPIRO, P.J., and M. J. KELLY and O'BRIEN, JJ.

PER CURIAM.

Defendants appeal as of right the opinion and order of the Court of Claims granting plaintiffs' motion to transfer the case back to the circuit court and dismissing as moot defendants' motion for summary disposition. We affirm.

The underlying facts of this case are commonly referred to as the "Flint water crisis." Though these facts are of significant public importance, they are largely irrelevant to this appeal. Briefly, in April 2014, the City of Flint switched the source of its drinking water from Lake Huron through the Detroit Water and Sewage Department (DWSD) to the Flint River. This decision ultimately created a public health emergency for Flint residents because it introduced significant levels of lead to their water supply. In October 2015, Flint's water supply was reconnected to DWSD.

On February 14, 2017, plaintiffs filed a 92-page second amended complaint in Genesee Circuit Court. Relevant to defendants in this appeal, plaintiffs alleged that defendants violated the Elliot Larsen Civil Rights Act (ELCRA), MCL 37.2101 *et seq*. The complaint alleged that defendants "were under a statutory duty to either provide water services to Plaintiffs so that they would not be denied the full and equal enjoyment of public water service on account of race, or they aided and abetted the public service provider to deny Plaintiffs full and equal enjoyment of

-1-

public water service [on] account of race" in violation of MCL 37.2302(a)[1] and MCL 37.2701(b).[2]  According to the complaint, defendants "knew that the water from the Flint River was grossly inferior to the water Flint and Genesee County citizens had been receiving from DWSD" and "devised or acquiesced to an Interim Plan that allowed the predominately white water users of Genesee County to receive safe and superior water from DWSD and the predominately black water users of Flint would have to accept during the interim period grossly inferior, previously rejected, and potentially unsafe Flint River Water."  The complaint stated, "There was no rational economic justification for treating the predominately white water users from those areas of Genesee County outside of Flint differently than the users of water from Flint, a predominately African American community."  The complaint concluded,

> Given the unexplained difference in treatment between these two groups of similarly situated water users, considering the absence of any rational economic or fiscal justification, and taking into account the racial makeup of the community that received the grossly inferior and dangerous water product, the deliberate decisions and actions of these conspiring Defendants in devising the Interim Plan can fairly be said to be the product of racial discrimination in violation of MCL 37.2302(a).

Alternatively, plaintiffs alleged that if the decision was "race neutral," then defendants were still liable because "the impact of" defendants' decision "had a grossly disparate negative impact on the predominately African-American and poor water users in the City of Flint."  The complaint included a jury demand.

On March 20, 2017, defendants filed notice that the claims against defendants named in this appeal were transferred to the Court of Claims, effective immediately, pursuant to MCL 600.6404(3).  On March 24, 2017, defendants filed a motion for summary disposition pursuant to MCR 2.116(C)(7) arguing that plaintiffs' claims against defendants must be dismissed because

---

[1] MCL 37.2302(a) provides as follows:

Except where permitted by law, a person shall not:

> (a) Deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service because of religion, race, color, national origin, age, sex, or marital status.

[2] MCL 37.2701(b) provides as follows:

Two or more persons shall not conspire to, or a person shall not:

* * *

> (b) Aid, abet, incite, compel, or coerce a person to engage in a violation of this act.

plaintiffs failed to comply with the filing requirements for the Court of Claims in MCL 600.6431. According to defendants, the Court of Claims had exclusive jurisdiction over this action pursuant to MCL 600.6419 and no exceptions to the court's jurisdiction applied. Defendants argued that the jury-trial exception, MCL 600.6421(1), to the court's jurisdiction did not apply because there was no right to a jury trial in an action under the ELCRA against a state defendant.

On March 30, 2017, plaintiffs filed a motion to transfer the case back to the circuit court. Plaintiffs argued that the Court of Claims did not have exclusive jurisdiction because the jury-trial exception to that court's jurisdiction applied. Plaintiffs pointed to Michigan appellate decisions that held a plaintiff had a jury-trial right in an ELCRA claim against a state defendant.

On May 16, 2017, the Court of Claims issued its order and opinion. The court recognized that it was bound to follow appellate decisions holding that a plaintiff had a right to a jury trial in a claim under the ELCRA against a state defendant. The Court of Claims held that, therefore, the circuit court had concurrent jurisdiction over plaintiffs' claims and found that the circuit court would serve "as the more appropriate venue to resolve the claims against state defendants" because it would "preserve plaintiffs' right to trial by jury." The court also recognized that "a return transfer [would] advance the efficient and fair administration of justice by allowing a single trier of fact to resolve all of the claims asserted by plaintiffs against all defendants." Accordingly, the Court of Claims granted plaintiffs' motion to transfer back to the circuit court and denied as moot defendants' motion for summary disposition.

Defendants now appeal.

MCL 600.6419(1) states, "Except as provided in sections 6421 and 6440, the jurisdiction of the court of claims, as conferred upon this chapter, is exclusive." The parties appear to agree that, if one of these exceptions does not apply, then the Court of Claims has exclusive jurisdiction over this action pursuant to MCL 600.6419(1)(a).[3] The dispute in this case centers on the exception to the Court of Claims's jurisdiction in MCL 600.6421(1), which provides in pertinent part as follows:

Nothing in this chapter eliminates or creates any right a party may have to a trial by jury, including any right that existed before November 12, 2013. Nothing in this chapter deprives the circuit, district, or probate court of jurisdiction to hear and determine a claim for which there is a right to a trial by jury as otherwise provided by law, including a claim against an individual employee of this state for

---

[3] MCL 600.6419(1)(a) states that the Court of Claims has jurisdiction

[t]o hear and determine any claim or demand, statutory or constitutional, liquidated or unliquidated, ex contractu or ex delicto, or any demand for monetary, equitable, or declaratory relief or any demand for an extraordinary writ against the state or any of its departments or officers notwithstanding another law that confers jurisdiction of the case in the circuit court.

which there is a right to a trial by jury as otherwise provided by law. Except as otherwise provided in this section, if a party has the right to a trial by jury and asserts that right as required by law, the claim may be heard and determined by a circuit, district, or probate court in the appropriate venue.

If plaintiffs had the right to a jury trial in their case against defendants, defendants do not contest that transfer back to the circuit court was otherwise proper.

Defendants do not appear to contest that a plaintiff generally has a right to a jury trial under the ELCRA. Even if they did, a plaintiff's right to a jury trial under the ELCRA is well established in Michigan's caselaw. See *Anzaldua v Band*, 457 Mich 530, 548; 578 NW2d 306 (1998) ("The CRA and FEPA both contained a right to a jury trial."); *Smith v Univ of Detroit*, 145 Mich App 468, 477; 378 NW2d 511 (1985) (recognizing in the context of a case brought under the ELCRA that "common-law actions for damages for similar discriminatory acts were recognized prior to the adoption of the 1963 Constitution," and, "[t]herefore, plaintiffs did indeed have the right to have a jury determine their action for damages in this case"); *King v General Motors Corp*, 136 Mich App 301, 308; 356 NW2d 626 (1984).

Rather, defendants argue on appeal that this right does not extend to state defendants because the Legislature did not waive the state's immunity to jury trial in the ELCRA. We disagree.

A challenge to the jurisdiction of the Court of Claims requires interpretation of the Court of Claims Act, which presents a statutory question reviewed de novo. *Parkwood Ltd Dividend Housing Ass'n v State Housing Dev Auth*, 468 Mich 763, 767; 664 NW2d 185 (2003). The availability of governmental immunity presents a question of law that is reviewed de novo. *Norris v Lincoln Park Police Officers*, 292 Mich App 574, 578; 808 NW2d 578 (2011). "Issues of statutory interpretation are questions of law that are reviewed de novo." *Klooster v City of Charlevoix*, 488 Mich 289, 295; 795 NW2d 578 (2011).

" 'The State, as sovereign, is immune from suit save as it consents to be sued, and any relinquishment of sovereign immunity must be strictly interpreted.' " *Ross v Consumers Power Co*, 420 Mich 567, 601; 363 NW2d 641 (1984), quoting *Manion v State*, 303 Mich 1, 19; 5 NW2d 527 (1942).

In resolving this issue, we find instructive our Supreme Court's reasoning in *Anzaldua*.[4] The *Anzaldua* Court first addressed whether a plaintiff, in general, had the right to a jury trial

---

[4] This Court has twice held that a plaintiff has the right to a jury trial when proceeding against a state defendant under the ELCRA. See *Barbour v Dep't of Social Servs*, 172 Mich App 275, 279-281; 431 NW2d 482 (1988); *Marsh v Dep't of Civil Serv*, 142 Mich App 557, 569-570; 370 NW2d 613 (1985). As published decisions of the Court of Appeals, the Court of Claims was required to follow these cases. See MCR 7.215(C)(2); *People v Mitchell*, 428 Mich 364, 369-370; 408 NW2d 798 (1987) (explaining vertical stare decisis). However, both cases were decided before our Supreme Court's decision in *Anzaldua*, and neither case expressly addressed

under the Whistleblowers' Protection Act (WPA), MCL 15.361 *et seq.*, and the Court held that a plaintiff did. *Anzaldua*, 457 Mich at 534-550. The *Anzaldua* Court then addressed the argument of the defendant Michigan State University (MSU) that "even if a jury right exists generally under the act, MSU is immune from suit before a jury because it is an arm of the state." *Id*. at 550. Our Supreme Court rejected this argument, reasoning as follows:

> Defendant has confused the test we use to determine whether the state is immune from *liability* with the test used for determining whether the state is immune from *suit*. As the Court noted in *Ross v Consumers Power Co (On Rehearing)*, the state's sovereign immunity from liability and its immunity from suit are not the same.

> Defendant MSU and amici curiae argue that the state's sovereign immunity from a trial by jury can be waived only by "express statutory enactment or by necessary inference from a statute." They are incorrect. The quoted language comes from this Court's opinion in *Mead v Public Service Comm*, 303 Mich 168, 173; 5 NW2d 740 (1942). In *Mead*, we examined portions of the motor vehicle law, 1929 CL 4724. In ruling on *Mead*, we overturned one of our own prior decisions, *Miller v Manistee Co Bd of Rd Comm'rs*, 297 Mich 487; 298 NW 105 (1941). We held that *Miller* had given the language of the motor vehicle law too broad a construction when it extended liability to the state. *Mead, supra* at 172-173.

> In *Miller*, the Court had construed the motor vehicle law to waive the state's immunity from liability as the owner of a vehicle. *Id*. at 490. However, the motor vehicle law made only the *driver* of a vehicle liable. The act provided:

>> "The provisions of this act applicable to the drivers of vehicles upon the highways, shall apply to the drivers of all vehicles owned or operated by this State or any county, city, town, district or any other political subdivision of the State subject to such specific exceptions as are set forth in this act." [*Mead, supra* at 172-173, quoting 1929 CL 4724.]

> In overruling *Miller*, the Court in *Mead* explained:

>> It is sufficient to note that the above-quoted portion of the statute by its express terms affects only the duties and liabilities of drivers. It does not enlarge or modify the duties or liabilities of the State as owner of a motor vehicle. [*Id*. at 173.]

---

whether the Legislature waived the state's immunity from jury trial in the ELCRA. Although these cases are not binding on this Court because they were published before November 1, 1990, MCR 7.215(J)(1), they may be persuasive, *In re Stillwell Trust*, 299 Mich App 289, 299 n 1; 829 NW2d 353 (2012).

The motor vehicle law did not, by its express terms or by necessary implication, provide liability for the state as an owner. Therefore, we held that the state had not waived its immunity to liability. *Id*. at 173-174.

The Whistleblowers' Protection Act satisfies the *Mead* test for waiver of immunity from liability. The Legislature expressly applied the act to the state by including the state and its political subdivisions in the definition of "employer." See MCL 15.361(b); MSA 17.428(1)(b). Because the state is expressly named in the act, it is within the act's coverage.

However, *Mead* does not provide a test for determining whether a jury right exists against the state. The Court of Appeals dissent cited *Mead* for the proposition that the state's immunity from suit before a jury could be waived only by express statutory enactment or by necessary inference. [*Anzaldua v Band*, 216 Mich App 561, 590; 550 NW2d 544 (1996)] (O'CONNELL, J., dissenting). However, *Mead* does not concern the state's immunity from suit. Rather, the state was subject to suit in the Court of Claims, and we held merely that it was immune from liability under the act involved in that case. As we noted above, immunity from suit and immunity from liability are distinct matters. See *Ross*, *supra* at 601.

Thus, the language from *Mead* to the effect that the state waives immunity only by express statutory enactment or by necessary inference applies only to the state's immunity from liability. It has no application to the state's immunity from suit, or to immunity from trial before a jury, which is at issue here.

The rule for immunity from suit was recognized by this Court in *Ross*: " 'The State, as sovereign, is immune from suit save as it consents to be sued, and any relinquishment of sovereign immunity [from suit] must be strictly interpreted . . . .' " *Id.* at 601, quoting *Manion* v *State Hwy Comm'r*, 303 Mich 1, 19-21; 5 NW2d 527 (1942).

The Legislature created the Court of Claims in 1939, permitting the state to be sued before a judge. *Ross*, *supra* at 600. The broad language of the act creating the Court of Claims mandates that suits against the state for money damages are typically brought in that forum. *Id*. See MCL 600.6419; MSA 27A.6419.

As *Ross* makes clear, the Legislature was free when enacting the Whistleblowers' Protection Act to waive the state's immunity from suit. *Ross*, *supra* at 601. Section 3 of the act allows suit to be brought in the circuit courts. The statute specifically includes the state among the bodies to be regulated by defining "employers" subject to the act to include the state and its political subdivisions. Nothing in the act suggests that the state is not to be treated the same as a business for purposes of the act's protection of noncivil service employees like the plaintiff. We find it significant that the Legislature chose to subject the state to suit in the circuit court rather than in the Court of Claims.

The express language of the act indicates that the Legislature intended to submit the state to the jurisdiction of the circuit court. As indicated above, the court rules govern in civil actions in circuit court. They provide that legal actions for money damages are to be tried by a jury upon request. Hence, it necessarily follows, the Legislature consented that the state may be tried by a jury in Whistleblowers' Protection Act cases.

We uphold the result reached by the Court of Appeals on the question whether the case against MSU may be tried by a jury. We find that MSU is subject to a trial by jury under the Whistleblowers' Protection Act as provided by the court rules, generally. Plaintiff is entitled to a jury in her suit against both defendants. [*Anzaldua*, 530 Mich at 550-554 (footnote omitted; some alterations in original).]

The WPA is constructed similarly to the ELCRA, see *id*. at 545-548, and, therefore, we find our Supreme Court's interpretation of the WPA to be instructive for how the ELCRA should be interpreted. Like MSU in *Anzaldua*, defendants in this case argue that they are not subject to a jury trial because the Legislature did not waive the state's immunity from jury trials in the ELCRA. And like MSU's argument in *Anzaldua*, defendants' argument fails.

MCL 37.2302 provides as follows:

Except where permitted by law, a person shall not:

(a) Deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service because of religion, race, color, national origin, age, sex, or marital status.

And MCL 37.2103 provides, in relevant part, as follows:

As used in this act:

* * *

(g) "Person" means an individual, agent, association, corporation, joint apprenticeship committee, joint stock company, labor organization, legal representative, mutual company, partnership, receiver, trust, trustee in bankruptcy, unincorporated organization, *the state or a political subdivision of the state or an agency of the state*, or any other legal or commercial entity.

(h) "Political subdivision" means a county, city, village, township, school district, or special district or authority of the state. [Emphasis added.]

Based on the foregoing, "[t]he Legislature expressly applied the act to the state by including the state and its political subdivisions in the definition" of "person." *Anzaldua*, 457 Mich at 551. Therefore, like the WPA, the ELCRA satisfies "the *Mead* test for waiver of immunity from liability." *Id*. at 551; see also *John Does 11-18 v Dep't of Corrections*, ___ Mich App ___, ___;

-7-

___ NW2d ___ (2018) (Docket Nos. 332536, 335440, 335527); slip op at 8 ("Contrary to defendants' assertions, the law is clear that governmental immunity does not apply to ELCRA claims.").

However, this does not resolve whether the Legislature in the ELCRA waived the state's "immunity from suit, or to immunity from trial before a jury, which is at issue here." *Anzaldua*, 457 Mich at 552. A cause of action under the ELCRA is provided in MCL 37.2801, which states as follows:

> (1) A person alleging a violation of this act *may bring a civil action for* appropriate injunctive relief or *damages*, or both.
>
> (2) *An action commenced pursuant to subsection (1) may be brought in the circuit court* for the county where the alleged violation occurred, or for the county where the person against whom the civil complaint is filed resides or has his principal place of business.
>
> (3) As used in subsection (1), "damages" means damages for injury or loss caused by each violation of this act, including reasonable attorney's fees. [Emphasis added.]

When enacting the ELCRA, the Legislature was free to waive the state's immunity from suit. See *Anzaldua*, 457 Mich at 553. MCL 37.2302(a) prohibits a "person" from denying an individual the full and equal enjoyment of a public service on the basis of race, and MCL 37.2103(g) includes the state and its political subdivisions in the definition of "person." Therefore, it is clear that the Legislature intended for the state and its political subdivisions to be regulated by and subject to the ELCRA. See *Anzaldua*, 457 Mich at 553. MCL 37.2801(2) allows suit under the ELCRA to be brought in circuit court. Nothing in the ELCRA indicates that the state is to be treated different from any other person, indicating that "the Legislature chose to subject the state to suit in the circuit court rather than in the Court of Claims." *Anzaldua*, 457 Mich at 553. Therefore, based on "[t]he express language of the act . . . the Legislature intended to submit the state to the jurisdiction of the circuit court." *Id*. And the court rules governing circuit court allow a party seeking money damages "to be tried by a jury upon request." *Id*. "Hence, it necessarily follows, the Legislature consented that the state may be tried by a jury in" ELCRA cases. *Id*. at 553-554. Accordingly, the Legislature waived the state's immunity from jury trial in the ELCRA, and plaintiffs were entitled to a jury trial in their action against defendants.

Defendants argue that *Anzaldua* was wrongly decided and that this Court should look to the United States Supreme Court's decision in *Lehman v Nakshian*, 453 US 156; 101 S Ct 2698; 69 L Ed 2d 548 (1981), when deciding this issue. However, *Lehman* was decided 17 years before *Anzaldua*, and as the dissent in *Anzaldua* recognized, "the majority has not even attempted to distinguish the logic in *Lehman*." *Anzaldua*, 457 Mich at 561 (WEAVER, J., dissenting). And regardless of whether *Anzaldua* was properly decided, "it is the Supreme Court's obligation to overrule or modify case law if it becomes obsolete, and until [that] Court takes such action, the Court of Appeals and all lower courts are bound by that authority." *State*

*Treasurer v Sprague*, 284 Mich App 235, 242; 772 NW2d 452 (2009) (quotation marks and citation omitted; alteration in original).

Because the Court of Claims properly transferred the case back to the circuit court, defendants' argument that plaintiffs did not follow the procedures necessary to proceed in the Court of Claims is moot and this Court need not address it. See *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998).[5]

Affirmed.

/s/ Douglas B. Shapiro
/s/ Michael J. Kelly
/s/ Colleen A. O'Brien

---

[5] In their reply brief, defendants contend that this outcome violates the separation of powers doctrine. However, defendants cite no law to support this claim, and simply assert their conclusion in broad terms. Therefore, defendants waived this issue by giving it only cursory treatment, *Blazer Foods, Inc v Rest Properties, Inc*, 259 Mich App 241, 252; 673 NW2d 805 (2003) ("[P]laintiffs have waived the issue by giving it such cursory treatment"), and defendants did not properly present the issue for appeal by raising it for the first time in a reply brief, *id*. ("[B]ecause the 'bifurcation' claim is first raised in plaintiffs' reply brief, it is untimely. Reply briefs may contain only rebuttal argument, and raising an issue for the first time in a reply brief is not sufficient to present the issue for appeal."). Moreover, the argument itself is without merit. The Legislature was free to waive its immunity to jury trial in the ELCRA, see *Anzaldua*, 457 Mich at 553, which it chose to do. Enforcing a statute as intended by the Legislature is the opposite of violating the separation of powers doctrine.