ANZALDUA v BAND

ANZALDUA v MICHIGAN STATE UNIVERSITY

Docket Nos. 106469, 106471. Argued January 7, 1998 (Calendar No. 12).
    Decided June 9, 1998.

Sharon Anzaldua brought an action under the Whistleblowers' Protec-
    tion Act, MCL 15.361 *et seq.*; MSA 17.428(1) *et seq.*, in the Ingham
    Circuit Court against Michigan State University and Professor
    Rudolph Band, alleging that her contract as a research laboratory
    worker had not been renewed because she had complained to the
    university's Environmental Affairs Office about conditions in a uni-
    versity laboratory. The court, Carolyn Stell, J., granted the defend-
    ants' motion to strike the plaintiff's demand for a jury trial, deter-
    mining that the act provided no such right. The Court of Appeals,
    MARKMAN, P.J., and J. D. PAYANT, J. (O'CONNELL, J., concurring in part
    and dissenting in part), reversed, holding that there is a right to a
    jury trial in an action brought under the act, and that the right
    exists even when the defendant is a state entity (Docket No.
    168358). The defendants appeal.

    In an opinion by Justice KELLY, joined by Chief Justice MALLETT,
    and Justices BRICKLEY, CAVANAGH, and BOYLE, the Supreme Court
    *held*:

    The Whistleblowers' Protection Act provides a right to a jury
    trial, and that right exists in suits against the state and its
    subdivisions.

    1. The Whistleblowers' Protection Act neither requires nor for-
    bids jury trials. Consistent with civil actions generally, the right to
    a jury under the act depends on the nature of the claim made and
    the relief sought. Where an action by its nature does not bar a jury
    trial, the claim is for money damages, there is a provision for bring-
    ing the action in circuit court, and the right to a jury is not denied,
    a plaintiff properly may demand a trial by jury. Use of the term
    "actual damages" in the act indicates an intent to provide a right to
    a jury trial in suits brought under the act. Actual damages is a legal,
    rather than an equitable, remedy, and legal issues are traditionally
    tried by a jury. Case law has held that a jury is proper where a stat-
    ute creates a cause of action for actual damages without specifying
    before whom the action is to be tried.

2. The state's sovereign immunity from liability and its immunity from suit are not the same. The Whistleblowers' Protection Act specifically includes the state and its political subdivisions among the bodies to be regulated. Nothing in the act suggests that the state is not to be treated the same as a business for purposes of the act's protection of non-civil service employees like the plaintiff. The express language of the act indicates that the state must submit to the jurisdiction of the circuit court and, thus, that the court rules apply. The court rules provide that legal actions for money damages are to be tried by a jury on request. Hence, the state may be tried by a jury in Whistleblowers' Protection Act cases.

Reasoning vacated; result affirmed.

Justice TAYLOR, joined by Justice WEAVER, dissenting, stated that the Legislature's failure to mention that a jury may hear or award damages in a Whistleblowers' Protection Act lawsuit should be given its obvious meaning, i.e., that it did not intend to provide for jury trials in such lawsuits. Nor does Const 1963, art 1, § 14 provide a basis for finding a right to a jury trial under the act because there was no common-law analogue of a whistleblowers' action when art 1, § 14 was adopted. The Court of Appeals clearly erred when it ruled to the contrary.

216 Mich App 561; 550 NW2d 544 (1996) affirmed in part.

*Green, Green & Craig, P.C.* (by *Christine A. Green*), for the plaintiff-appellee.

*Fraser, Trebilcock, Davis & Foster, P.C.* (by *Michael E. Cavanaugh, Mark R. Fox,* and *Graham K. Crabtree*) for defendant-appellant Band.

*Michael J. Kiley* for defendant-appellant Michigan State University.

Amici Curiae:

*Butzel Long* (by *Leonard M. Niehoff* and *John C. Blattner*), *Scott P. Hill-Kennedy, Elizabeth M. Barry, Gloria A. Hage,* and *Daniel J. Bernard* for Ferris State University, University of Michigan, and Wayne State University.

*Clark, Hill, P.L.C.* (by *Duane L. Tarnacki* and *J. Walker Henry*), for Michigan Manufacturers Association.

*Roy, Shecter, Mirer & Vocht, P.C.* (by *Jeanne Mirer*) for Michigan Trial Lawyers Association.

*Rentrop, Vanderkloot, Haynes & Morrison, P.C.* (by *Jeffrey K. Haynes* and *C. Thomas Ludden*), for Michigan Environmental Council.

KELLY, J. We granted leave in this case to decide whether there is a right to trial by jury in an action under the Whistleblowers' Protection Act. MCL 15.361 *et seq.*; MSA 17.428(1) *et seq.* If the right does exist, does it obtain when the defendant is the state or one of its political subdivisions? We hold that the act contains a right to a jury trial, and that the right exists in suits against the state of Michigan and its subdivisions. We thus affirm the result reached by the Court of Appeals, but for a different reason.

I

Plaintiff began an action under the Whistleblowers' Protection Act in circuit court against Michigan State University and Professor Rudolph Band. She alleged that her contract as a research laboratory worker had not been renewed because she had complained to the university's Environmental Affairs Office about conditions in a university laboratory. The circuit court granted a defense motion to strike the plaintiff's jury demand.

Plaintiff filed an application for leave to appeal. The Court of Appeals granted the application and held that there is a right to a jury trial in an action brought under the act. 216 Mich App 561; 550 NW2d

544 (1996). It held, also, that the right to jury trial exists even when the defendant is a state entity. We granted defendants' applications for leave to appeal. 456 Mich 865 (1997).

This Court is asked to review the Court of Appeals reversal of the trial court's decision to deny plaintiff a jury. The trial court granted defendants' motion to strike plaintiff's jury demand because it determined that the act provided no right to a jury trial. Defendants pose a question of law, which we review de novo. *Cardinal Mooney High School v Michigan High School Athletic Ass'n*, 437 Mich 75, 80; 467 NW2d 21 (1991).

II

A

The Legislature designed the Whistleblowers' Protection Act to protect the public from unlawful conduct by corporations and government bodies.[1] The act protects the public by removing barriers to the reporting of violations of law by employees. *Dolan v Continental Airlines*, 454 Mich 373, 379; 563 NW2d 23 (1997). It defines "employees" to include essentially all workers except those in state classified civil service. MCL 15.361(a); MSA 17.428(1)(a). It governs "employers." Under subsection 1(b), the state and its political subdivisions are to be considered employers for its purposes. MCL 15.361(b); MSA 17.428(1)(b).

---

[1] See *Dolan v Continental Airlines*, 454 Mich 373, 378, n 9; 563 NW2d 23 (1997), quoting the legislative analysis of the act:

Violations of the law by corporations or by governments and by the men and women who have the power to manage them are among the greatest threats to the public welfare. [Citation omitted.]

The act forbids employers from retaliating against employees who report, or are about to report, violations of the law. MCL 15.362; MSA 17.428(2).

Section 3 describes the steps to be taken by employees who believe that their employers have not complied with the act:

> (1) A person who alleges a violation of this act may bring a civil action for appropriate injunctive relief, or actual damages, or both within 90 days after the occurrence of the alleged violation of this act.
>
> (2) An action commenced pursuant to subsection (1) may be brought in the circuit court for the county where the alleged violation occurred, the county where the complainant resides, or the county where the person against whom the civil complaint is filed resides or has his or her principal place of business.
>
> (3) As used in subsection (1), "damages" means damages for injury or loss caused by each violation of this act, including reasonable attorney fees. [MCL 15.363; MSA 17.428(3).]

Section 4 delineates the potential remedies that are available to a successful claimant:

> A court, in rendering a judgment in an action brought pursuant to this act, shall order, as the court considers appropriate, reinstatement of the employee, the payment of back wages, full reinstatement of fringe benefits and seniority rights, actual damages, or any combination of these remedies. A court may also award the complainant all or a portion of the costs of litigation, including reasonable attorney fees and witness fees, if the court determines that the award is appropriate. [MCL 15.364; MSA 17.428(4).]

B

The foremost rule of statutory construction is to discern and give effect to the intent of the Legisla-

ture. *Murphy v Michigan Bell Telephone Co*, 447 Mich 93, 98; 523 NW2d 310 (1994). See also *Nation v W D E Electric Co*, 454 Mich 489, 494; 563 NW2d 233 (1997). If statutory language is clear and unambiguous, lawmakers must have intended the meaning they clearly expressed, and the statute must be enforced as written. No further construction is required or permitted. *Tryc v Michigan Veterans' Facility*, 451 Mich 129, 135; 545 NW2d 642 (1996). See also *Western Michigan Univ Bd of Control v Michigan*, 455 Mich 531; 565 NW2d 828 (1997).

1

There is no express provision in the Whistleblowers' Protection Act specifying whether an action brought under it is to be tried before a jury or before a judge sitting without a jury. On the basis of this silence, the dissent would hold that no jury right is available in Whistleblowers' Protection Act actions. The dissent suggests that the Legislature's failure to specifically state that a jury right exists means the Legislature did not intend whistleblowers' suits to be tried by a jury. We disagree both with the rule suggested by the dissent and the dissent's analysis of the jury issue.

The rule suggested by the dissent is inappropriate in this case. It could be used alternatively to support a conclusion that the jury right is given, or that it has been withheld. As the dissent suggests, it is clear the Legislature knows how to expressly provide that an action is to be tried to a jury. It is also clear that the Legislature knows how to provide that an action is to be tried to a judge. For example, in the Employee

Right to Know Act,[2] the Legislature specifically stated
that the court was to "award" damages. One could
apply the dissent's rule to the case at hand and legiti-
mately reach the opposite conclusion from the dis-
sent's: given that the Legislature knew how to provide
that the court should "award" damages, but did not, it
did not intend for a judge to decide that issue.

Defendants argue that the Legislature's use of
"court" rather than "court or jury" is determinative.
We disagree. What is important in understanding the
Legislature's intent is not that it used the word
"court" instead of "jury," but, rather, what it provided
that the "court" should do. The Legislature described
the court's role in WPA actions in terms of "render[ing]
a judgment," *not* in terms of "awarding damages." The
expressions are not interchangeable; "awarding dam-
ages" and "render[ing] a judgment" have different
meanings.

When a court renders a judgment, it is entering an
order based on previously decided issues of fact.[3]
"Rendering judgment" does not mean the judge is
making a determination of the entitlement of a party

---

[2] The pertinent portion of the Right to Know Act, MCL 423.511; MSA
17.62(11), states:

  [T]he court shall award an employee prevailing in an action pur-
  suant to this act the following damages:

     (a) For a violation of this act, actual damages plus costs.

     (b) For a wilful and knowing violation of this act, $200.00 plus
  costs, reasonable attorney's fees, and actual damages. [Emphasis
  added.]

[3] A judge can also render a judgment by making a decision on the case
as a matter of law. See, for example, MCL 73.17; MSA 5.1445 ("If judgment
is not rendered . . . on account of errors of law or defects in the pro-
ceedings and if the appeal is not dismissed, the parties may proceed to
trial by jury").

to an award of actual damages. Instead, it is the procedural step the judge takes after the factfinder has made that determination.[4]

The difference in the terms is made clear by the statute itself. The WPA provides that the court is to "award attorney fees." Deciding the entitlement to an award of attorney fees has traditionally been the job of a judge, not a jury. Because the act provides that the court should award attorney fees, it is clear that the Legislature intended that a judge should decide whether a party is entitled to fees, and in what amount.

2

The defendants in the case before us argue that the remedies available in § 4 of the act indicate that a judge, rather than a jury, should decide factual issues. Section 4 empowers a court to order any of several equitable remedies: reinstatement, back pay, reinstatement of fringe benefits and seniority, or a combination of them.

Defendants argue that the act provides for an equitable proceeding, only. They urge the Court to adopt the reasoning of a federal district court that construed all actions under the Ohio Whistleblowers' Protection Act to be equitable proceedings. *Rheinecker v Forest Laboratories, Inc,* 813 F Supp 1307 (SD Ohio,

---

[4] As the following statutes illustrate, rendering a judgment is merely the formal step of entering an order granting already-determined relief. It is not synonymous with "awarding damages." See, for example, MCL 128.161; MSA 8.151, which provides "the said circuit judge shall . . . divide the sum awarded by said jury between the claimants . . . *rendering against said township a separate judgment* for each of the amounts so awarded." (Emphasis added.) MCL 128.156; MSA 8.146 (The "court shall . . . render judgment for the sum specified in the certificate signed by [the] jury").

1993). Defendants and amici curiae urge that the use of the word "court" in § 3 of the act is determinative.[5] This, too, comes from *Rheinecker*, because the court there opined that the legislature would have used the word "jury" had it intended a jury to hear claims under the act. However, as the court stated, its decision was based not only on the absence of the word "jury," but, also, on the remedies that the act provided:

> Furthermore, *although perhaps not controlling,* the Act specifically speaks in terms of the Court's authority, not the jury's. Thus, *in the face of the enumerated equitable remedies* and the language of the statute itself, the Court is not persuaded by the Plaintiff's argument that the Act gives rise to a right to trial by jury. [813 F Supp 1314 (citation omitted; emphasis added).]

We do not find that the reasoning in *Rheinecker* regarding the Ohio act is persuasive authority for construing the Michigan act. The comparison to *Rheinecker* is inapposite, because our act provides for a legal remedy in the form of actual damages, while the Ohio act does not. In cases involving both equitable and legal issues, juries may decide factual issues relating to money damages, while judges retain the authority to determine the facts involving equitable remedies.[6]

---

[5] Section 3 of the act provides that a *court* may order one or a combination of the remedies available, as appropriate.

[6] In this regard, we note that, under MCR 2.509(D), the court, on motion or its own initiative, may use a jury in an advisory capacity to try equitable issues. The parties may consent to have a jury decide issues that otherwise are not triable to a jury as a matter of right. Also, under subrule B, if a party has a right to a trial by jury but does not demand it, the court has discretionary authority to order a jury trial anyway.

C

The existence of actual damages is significant because it distinguishes the Michigan act. Also, it indicates that the Legislature intended that the damages issue be tried by a jury, upon request. On its face, the language of the Whistleblowers' Protection Act does not answer whether a jury right is available in an action brought under it. The statute neither explicitly requires nor attempts to forbid a jury. Where the language of a statute does not answer our questions, we must look behind its words to determine the Legislature's intent. Therefore, it is necessary to broaden the scope of our inquiry to determine whether the Legislature intended to provide a jury right in suits brought under the act.

---

Moreover, as explained by the Court of Appeals in *Dutka v Sinai Hosp of Detroit*, 143 Mich App 170, 173-174; 371 NW2d 901 (1985):

> The parties have a constitutional right in Michigan to have equity claims heard by a judge sitting as a chancellor in equity. *Abner A Wolf, Inc v Walch*, 385 Mich 253; 188 NW2d 544 (1971). If a plaintiff seeks only equitable relief, he has no right to a trial by jury. *Robair v Dahl*, 80 Mich App 458, 460-462; 264 NW2d 27 (1978). *However, in this case, the plaintiff sought both equitable relief in the form of specific performance and legal relief in the form of damages. In this situation the plaintiff had a right to have a jury hear his damage claim.*

> \*     \*     \*

> These cases, which allow a chancellor to award consequential damages along with equitable relief, do not bar plaintiff's demand for a jury where legal remedies are sought along with equitable relief. *The cases defendant relies on only suggest that in some instances a chancellor may also award money damages in fashioning the appropriate remedy. The cases do not bar a jury trial on legal claims when it has been properly demanded.* [Emphasis added.]

See also *B & M Die Co v Ford Motor Co*, 167 Mich App 176; 421 NW2d 620 (1988).

In *Lorillard v Pons*,[7] the United States Supreme Court found a statutory right to a jury in the Age Discrimination in Employment Act (ADEA), 29 USC 624 *et seq*. One of the reasons it concluded that the ADEA contained the right to a jury was Congress' inclusion of "legal" relief among the remedies available under the act. The Court explained how it inferred a statutory right to a jury from Congress' inclusion of the words "legal relief":

> This inference [that the ADEA provides a statutory jury right] is buttressed by an examination of the language Congress chose to describe the available remedies under the ADEA. Section 7(b) empowers a court to grant "*legal* or equitable relief" and § 7(c) authorizes individuals to bring actions for "*legal* or equitable relief" (emphasis added). The word "legal" is a term of art: In cases in which legal relief is available and legal rights are determined, the Seventh Amendment provides a right to jury trial. "[W]here words are employed in a statute which had at the time a well-known meaning at common law or in the law of this country they are presumed to have been used in that sense unless the context compels to the contrary." We can infer, therefore, that by providing specifically for "legal" relief, Congress knew the significance of the term "legal," and intended there would be a jury trial on demand to "enforc[e] . . . liability" . . . . [434 US 583 (citations omitted).]

We find the Court's reasoning in *Lorillard* persuasive, and apply that reasoning to the whistleblowers' act.[8]

---

[7] 434 US 575; 98 S Ct 866; 55 L Ed 2d 40 (1978).

[8] The dissent incorrectly asserts that *Lorillard* does not support our holding. It apparently concludes that we must find no jury right under the WPA because the Supreme Court, in *Feltner v Columbia Pictures Television, Inc*, 523 US ___; 118 S Ct 1279; 140 L Ed 2d 438 (1998), found no statutory jury right under the Copyright Act. Two things, in particular, distinguish *Feltner* from the present case. First, the WPA, on its face, leaves

Using this analysis, we conclude that the Legislature's use of the term "actual damages" is significant. It indicates the Legislature's intent to provide for a jury right in suits brought under the act.

While the ADEA provides a "legal" remedy, analogous language in the whistleblowers' act provides for "actual damages." "Actual damages" is also a term of art. Actual damages is a legal, rather than an equitable, remedy, and legal issues are traditionally tried to a jury.

Moreover, the notion that the Legislature might intend a jury trial without explicitly so stating is not new. More than one hundred and forty years ago, the Legislature provided a statutory cause of action for actual damages that contained the right to a jury. However, the act itself did not expressly provide for jury trials. It was an 1875 cause of action for the benefit of wives and children of certain persons to whom liquor was sold. It provided:

> Every wife, child, . . . or other person who shall be injured in person or property, means of support, by any intoxicated person, . . . shall have a right of action in his or her own name against any person or persons who . . . have caused . . . the intoxication . . . ; . . . and *in any such action, the plaintiff shall have a right to recover actual and exemplary damages.* [1875 PA 231, § 3 (emphasis added).]

---

the question of a statutory jury right open, while the Copyright Act required a judge to hear the case. Second, the dissent fails to point out that the plaintiff in *Feltner* was suing for statutory damages, while our holding is premised on the availability of actual damages under the WPA.

Also, the dissent passes over the fact that *Feltner* recognized that *Lorillard* relied both on the reference to the ADEA as well as the existence of a "legal" remedy. *Id.* at 118 S Ct 1284.

In *Friend v Dunks*,[9] this Court considered the appropriate form of action under the statute, stating, "The statute does not prescribe the form of remedy, so that the party seeking to recover under either of these provisions must resort to the common law for an appropriate form of action." *Id.* at 27. The Court held that the cause of action for actual and exemplary damages was an action on the case, and was properly tried by a jury.[10] Ironically, the Court relied on an Ohio Supreme Court decision that held under one of that state's statutes, " 'What those damages are, in any given case, the legislature have seen proper to leave in these broad terms to a jury to determine.' " *Id.* at 32, quoting *Mulford v Clewell*, 21 Ohio St 191, 196 (1871).

Like Congress, when it adopted the Age Discrimination in Employment Act and included "legal remedies," the Michigan Legislature created a cause of action in the WPA and provided for "actual damages." As far back as 1877, the Court has held that a jury is proper where a statute creates a cause of action for

---

[9] 37 Mich 25 (1877).

[10] *Id.* at 32. The Court also determined that damages for mental anguish, loss of society, and the like were available under the statute, but stressed that care had to be taken to avoid damages that were too remote. *Id.* at 30-31. The jury, it seemed, was the proper body to so limit the plaintiffs' recovery:

This whole question of permitting all the facts and circumstances in this class of cases to be laid before the jury, under such instructions and advice from the court as would tend to prevent the allowance of such as might be merely possible, or too remote and fanciful in their character to be safely considered as the result of the injury . . . . [*Id.* at 32.]

This statement specifically pertains to the admission of evidence before the jury rather than a jury right. However, the Court's discussion leaves no room for doubt that the case was to go before the jury as a matter of course.

actual damages without specifying before whom the
action is to be tried. The Legislature is deemed to be
aware of the meaning given to the words it uses,
including the jury right that accompanies actual dam-
ages. Our holding recognizes that the Legislature
imported into the WPA the meaning of actual damages,
just as Congress had imported the jury right into the
ADEA by providing for legal relief in *Lorillard.* We hold
that, by including that term, the Legislature intended
that the act contain a right to a trial by jury.[11]

D

There is another aspect of the Supreme Court deci-
sion in *Lorillard* supportive of our conclusion that
the whistleblowers' act provides a right to trial by
jury. In addition to Congress' use of the term "legal
remedy," the Court's conclusion in *Lorillard* was
based on an historical analysis of the ADEA. Upon
examining the ADEA and its history, the Court found
that Congress intended to import into the ADEA the
procedures and practices of the Fair Labor Standards
Act.[12] This contributed to the Court's conclusion that
the structure of the ADEA provided a right to a jury
trial.

The Court noted that Congress had selectively
adopted provisions from the FLSA by choosing to
include those consistent with the ADEA scheme, and to

---

[11] We note that the Seventh Amendment does not apply to the states, so
it does not bind our conclusion on this issue. However, the holding in
*Lorillard* did not recognize a constitutional right to a jury under the ADEA.
Instead, the Court relied on Congress' use of the term "legal" as an indica-
tion of what it intended under the act. Because "legal" remedies have
been held to be constitutionally triable by a jury, and Congress used that
word, it showed Congress' intent to provide for trial of the legal issues by
a jury.

[12] 29 USC 201 *et seq.*

exclude those not appropriate for the ADEA. *Id.* at 578-580. The ADEA specifically stated that suits brought under it were to be tried in a manner similar to suits brought under the FLSA.[13]

"Long before Congress enacted the ADEA, it was well established that there was a right to a jury trial in private actions pursuant to the FLSA." *Id.* at 580. Where it "adopts a new law incorporating sections of a prior law, Congress normally can be presumed to have had knowledge of the interpretation given to the incorporated law . . . ." *Id.* at 581. Congress had been selective in the provisions it chose to include in the ADEA. Hence, its inclusion of the remedy provisions indicated to the Court that Congress intended to provide a jury right in the ADEA. A similar historical analysis of the WPA supports our conclusion that the Legislature intended trials by jury under that act.

The language of the WPA has a long history traceable to the Fair Employment Practices Act, MCL 423.301; MSA 17.458(1), enacted in 1955. The FEPA was designed

> to promote and protect the welfare of the people of this state by prevention and elimination of discriminatory employment practices and policies based upon race, color, religion, national origin, or ancestry . . . . [*Id.*]

The act created the Fair Employment Practices Commission, which it empowered to create rules to enforce the act's requirements and to investigate and hold hearings on alleged violations.

---

[13] In particular, each act had two enforcement mechanisms. The secretary of labor could sue to force compliance with the acts, or a private litigant could bring a cause of action for legal and equitable relief. *Lorillard, supra* at 578.

The FEPA required that complaints be brought to the commission. If a person involved in a proceeding under the act was "aggrieved by a final order of the commission," only then was the person entitled to appeal from the commissioner's decision to the circuit court. MCL 423.308; MSA 17.458(8). There, the appeal was to be tried de novo. Subsection 10(c) of the act provided:

> This act shall be so construed that [the constitutional guarantee of the right to jury trial] shall apply in any circuit court to any case or action arising under this act . . . .

In *Lesniak v Fair Employment Practices Comm*,[14] this Court held that the de novo and jury trial provisions were in direct conflict with the act's other provisions. *Id.* at 504. The act called on the courts to undertake the administrative task of hearings, violating the separation of powers. *Id.* at 505. The Court interpreted the de novo review provisions to operate, instead, as if on a grant of certiorari. *Id.* at 505-506.

The people of this state reenacted their constitution in 1963. One of the new provisions in the 1963 Constitution was Const 1963, art 5, § 29, which established the civil rights commission.[15] In turn, the Legislature

---

[14] 364 Mich 495; 111 NW2d 790 (1961).

[15] Art 5, § 29  provides in part:

There is hereby established a civil rights commission . . . . It shall be the duty of the commission in a manner which may be prescribed by law to investigate alleged discrimination against any person because of religion, race, color or national origin in the enjoyment of the civil rights guaranteed by law and by this constitution, and to secure the equal protection of such civil rights without such discrimination. The legislature shall provide an annual appropriation for the effective operation of the commission.

enacted enabling legislation that described the commission and outlined its duties. MCL 37.1; MSA 3.548(1). This act abolished the FEPC and transferred all its powers and duties to the newly created commission.

The Civil Rights Commission legislation itself was repealed in 1976 and reenacted, MCL 37.2601; MSA 3.548(601).[16] The 1976 Civil Rights Act provided the following additional remedies:

> (1) A person alleging a violation of this act may bring a civil action for appropriate injunctive relief or damages, or both.
>
> (2) An action commenced pursuant to subsection (1) may be brought in the circuit court for the county where the alleged violation occurred, or for the county where the person against whom the civil complaint is filed resides or has his principal place of business.
>
> (3) As used in subsection (1), "damages" means damages for injury or loss caused by each violation of this act, including reasonable attorney fees. [MCL 37.2801; MSA 3.548(801).]

The Legislature included nearly identical language in the Whistleblowers' Protection Act. It contains the wording from the CRA authorizing a suit in the circuit court:

> (1) A person who alleges a violation of this act may bring a civil action for appropriate injunctive relief, or actual damages, or both within 90 days after the occurrence of the alleged violation of this act.
>
> (2) An action commenced pursuant to subsection (1) may be brought in the circuit court for the county where the alleged violation occurred, the county where the com-

---

[16] Repealed by 1976 PA 453, § 804.

plainant resides, or the county where the person against whom the civil complaint is filed resides or has his or her principal place of business.

(3) As used in subsection (1), "damages" means damages for injury or loss caused by each violation of this act, including reasonable attorney fees. [MCL 15.363; MSA 17.428(3).]

The Civil Rights Act also contained a specific provision dealing with attorney fees:

A court, in rendering a judgment brought pursuant to this article, may award all or a portion of the costs of litigation, including reasonable attorney fees and witness fees, to the complainant in the action if the court determines that the award is appropriate. [MCL 37.2802; MSA 3.548(802).]

The Whistleblowers' Protection Act contains the language from this subsection of the Civil Rights Act in a single provision describing both the fees and remedies available under the act:

A court, in rendering a judgment in an action brought pursuant to this act, shall order, as the court considers appropriate, reinstatement of the employee, the payment of back wages, full reinstatement of fringe benefits and seniority rights, actual damages, or any combination of these remedies. A court may also award the complainant all or a portion of the costs of litigation, including reasonable attorney fees and witness fees, if the court determines that the award is appropriate. [MCL 15.364; MSA 17.428(4).]

In enacting the WPA, the Legislature included the enforcement provisions from the CRA in the new act. Although the act contains no explicit statement that CRA procedures should be followed in WPA actions, the Legislature's use of identical language is meaningful. As the Supreme Court in *Lorillard* explained:

We are not unmindful of the difficulty of discerning Congressional intent where the statute provides no express answer. However, we cannot assume in the face of Congress' extensive knowledge of the operation of the FLSA, illustrated by its selective incorporation and amendment of the FLSA provisions for the ADEA, that Congress was unaware that courts had uniformly afforded jury trials under the FLSA. Nor can we believe that in using the word "legal," Congress was oblivious to its long-established meaning or significance. We are therefore persuaded that Congress intended that in a private action under the ADEA a trial by jury would be available where sought by one of the parties. [*Id.* at 585.]

The CRA and FEPA both contained a right to a jury trial.[17] We are persuaded that the Legislature intended suits under the WPA to be brought before a jury as well. We deduce from its inclusion of essentially identical enforcement provisions, an intent for WPA actions to be tried by a jury, as CRA actions are. We also find the inclusion of actual damages to be significant in light of the historical jury right available where actual damages are at issue. For these reasons, we hold that the WPA contains a statutory right to trial by jury.

E

Defendants argue that the Court of Appeals constitutional conclusion is contrary to *Conservation Dep't v Brown*, 335 Mich 343; 55 NW2d 859 (1952). In *Brown*, this Court held that trial by jury was not required by the constitution in a statutorily created in

---

[17] "Cases in state courts brought under both [CRA] and FEPA have been and currently are being tried by juries." *Lambert v Rockwell Int'l Corp*, 518 F Supp 665, 667 (ED Mich, 1981). See, for example, *Matras v Amoco Oil Co*, 424 Mich 675; 385 NW2d 586 (1986); *Howard v Canteen Corp*, 192 Mich App 427; 481 NW2d 718 (1992).

rem forfeiture action brought against the defendant's property under 1948 CL 300.14.

The statute involved in *Brown* provided for a summary forfeiture proceeding against the property seized. Then, as now, the right to a trial by jury was guaranteed to the extent it existed before enactment of the state constitution.[18] " 'Such summary proceedings as were known to the common law were not triable by a jury as a matter of right.' " *Id.* at 348, quoting *State v Kelly*, 57 Mont 123, 130; 187 P 637 (1920). Therefore, we held that the right to a jury trial in summary proceedings under that act was not constitutionally guaranteed.

Our decision in *Brown* does not control the present case because we do not need to reach the constitutional issue involved there. The jury right defined is in the nature of a floor, not a ceiling. *Brown* did not hold that the constitution *forbade* trials by jury, only that the constitution did not *require* them and the statute in question did not provide for them.[19]

Consistent with civil actions generally, the right to a trial by jury under the Whistleblowers' Protection Act depends on the nature of the claim made and the relief sought. Where (1) an action by its nature is not jury barred, (2) the claim is for money damages, (3) the Legislature provided for it to be brought in circuit court, and (4) the Legislature did not deny the right to

---

[18] *Id.* at 346. Const 1908, art 2, § 13 provided: "The right of trial by jury shall remain . . . ."

[19] The Court there noted that the action in question was " 'a new proceeding, and therefore, if jury trial cannot be had in it, that method of trial is not cut off, but is simply not given.' " *Id.* at 350, quoting *State Tax-Law Cases*, 54 Mich 350, 363; 20 NW 493 (1884).

a jury, the plaintiff properly may demand a trial by
jury.[20]

### III

Having found that plaintiff may properly demand a
jury in her suit under the act, we now decide whether
the existence of a state defendant changes this result.
Defendant MSU argues that, even if a jury right exists
generally under the act, MSU is immune from suit
before a jury because it is an arm of the state.

Defendant has confused the test we use to deter-
mine whether the state is immune from *liability* with
the test used for determining whether the state is
immune from *suit*. As the Court noted in *Ross v Con-
sumers Power Co (On Rehearing)*,[21] the state's sover-
eign immunity from liability and its immunity from
suit are not the same.

Defendant MSU and amici curiae argue that the
state's sovereign immunity from a trial by jury can be
waived only by "express statutory enactment or by
necessary inference from a statute." They are incor-
rect. The quoted language comes from this Court's
opinion in *Mead v Public Service Comm*, 303 Mich
168, 173; 5 NW2d 740 (1942). In *Mead*, we examined
portions of the motor vehicle law, 1929 CL 4724. In
ruling on *Mead*, we overturned one of our own prior
decisions, *Miller v Manistee Co Bd of Rd Comm'rs*,

---

[20] We note that MCR 2.509(C) describes the sequence of trial when
some issues are to be tried by the jury and others by the judge. It
expressly provides that the constitutional right to a trial by jury must be
preserved "according to the basic nature of every issue for which a
demand for jury trial has been made under MCR 2.508." Subrule D, which
pertains to advisory juries and juries that are convened by consent, also
refers to actions that are not triable by a jury by right "because of the
basic nature of the issue."

[21] 420 Mich 567, 601; 363 NW2d 641 (1984).

297 Mich 487; 298 NW 105 (1941). We held that *Miller* had given the language of the motor vehicle law too broad a construction when it extended liability to the state. *Mead, supra* at 172-173.

In *Miller*, the Court had construed the motor vehicle law to waive the state's immunity from liability as the owner of a vehicle. *Id.* at 490. However, the motor vehicle law made only the *driver* of a vehicle liable. The act provided:

> "The provisions of this act applicable to the drivers of vehicles upon the highways, shall apply to the *drivers* of all vehicles owned or operated by this State or any county, city, town, district or any other political subdivision of the State subject to such specific exceptions as are set forth in this act." [*Mead, supra* at 172-173, quoting 1929 CL 4724.]

In overruling *Miller*, the Court in *Mead* explained:

> It is sufficient to note that the above-quoted portion of the statute by its express terms affects only the duties and liabilities of *drivers*. It does not enlarge or modify the duties or liabilities of the State as *owner* of a motor vehicle. [*Id.* at 173.]

The motor vehicle law did not, by its express terms or by necessary implication, provide liability for the state as an owner. Therefore, we held that the state had not waived its immunity to liability. *Id.* at 173-174.

The Whistleblowers' Protection Act satisfies the *Mead* test for waiver of immunity from liability. The Legislature expressly applied the act to the state by including the state and its political subdivisions in the definition of "employer." See MCL 15.361(b); MSA

17.428(1)(b). Because the state is expressly named in the act, it is within the act's coverage.

However, *Mead* does not provide a test for determining whether a jury right exists against the state. The Court of Appeals dissent cited *Mead* for the proposition that the state's immunity from suit before a jury could be waived only by express statutory enactment or by necessary inference. 216 Mich App 590 (O'CONNELL, J., dissenting). However, *Mead* does not concern the state's immunity from suit.[22] Rather, the state was subject to suit in the Court of Claims, and we held merely that it was immune from liability under the act involved in that case. As we noted above, immunity from suit and immunity from liability are distinct matters. See *Ross, supra* at 601.

Thus, the language from *Mead* to the effect that the state waives immunity only by express statutory enactment or by necessary inference applies only to the state's immunity from liability. It has no application to the state's immunity from suit, or to immunity from trial before a jury, which is at issue here.

The rule for immunity from suit was recognized by this Court in *Ross*: " 'The State, as sovereign, is immune from suit save as it consents to be sued, and any relinquishment of sovereign immunity [from suit] must be strictly interpreted . . . .' " *Id.* at 601, quoting *Manion v State Hwy Comm'r*, 303 Mich 1, 19-21; 5 NW2d 527 (1942).

The Legislature created the Court of Claims in 1939, permitting the state to be sued before a judge.

---

[22] *Mead* stands for the proposition that "the common-law doctrine of sovereign immunity from tort liability could not be waived or abrogated except by statute." *Ross, supra* at 601.

*Ross, supra* at 600. The broad language of the act creating the Court of Claims mandates that suits against the state for money damages are typically brought in that forum. *Id.* See MCL 600.6419; MSA 27A.6419.

As *Ross* makes clear, the Legislature was free when enacting the Whistleblowers' Protection Act to waive the state's immunity from suit. *Ross, supra* at 601. Section 3 of the act allows suit to be brought in the circuit courts. The statute specifically includes the state among the bodies to be regulated by defining "employers" subject to the act to include the state and its political subdivisions. Nothing in the act suggests that the state is not to be treated the same as a business for purposes of the act's protection of noncivil service employees like the plaintiff. We find it significant that the Legislature chose to subject the state to suit in the circuit court rather than in the Court of Claims.[23]

The express language of the act indicates that the Legislature intended to submit the state to the jurisdiction of the circuit court. As indicated above, the court rules govern in civil actions in circuit court. They provide that legal actions for money damages are to be tried by a jury upon request. Hence, it necessarily follows, the Legislature consented that the

---

[23] See, for example, *Barbour v Dep't of Social Services*, 172 Mich App 275, 280; 431 NW2d 482 (1988):

> In most types of actions, the state cannot be tried in front of a jury because the Legislature requires those actions to be tried in the Court of Claims, where cases are heard without a jury . . . .
>
> Had the Legislature intended all civil rights claims against the state to be tried without a jury, it would seem that it would have conferred jurisdiction over such suits upon the Court of Claims, not the circuit court.

state may be tried by a jury in Whistleblowers' Protection Act cases.

We uphold the result reached by the Court of Appeals on the question whether the case against MSU may be tried by a jury. We find that MSU is subject to a trial by jury under the Whistleblowers' Protection Act as provided by the court rules, generally. Plaintiff is entitled to a jury in her suit against both defendants.

IV

Because the right to jury trial exists as a matter of legislative intent under the Whistleblowers' Protection Act, it is unnecessary for us to reach the question whether such a right is preserved by the Michigan Constitution. Hence, we vacate the reasoning in the Court of Appeals opinion, while affirming the result. MCR 7.302(F)(1).

MALLETT, C.J., and BRICKLEY, CAVANAGH, and BOYLE, JJ., concurred with KELLY, J.

TAYLOR, J. (*dissenting*). We granted leave to determine whether there is a right to a jury trial under the Whistleblowers' Protection Act. The majority, eschewing the Court of Appeals constitutional analysis, finds there is such a right, notwithstanding the fact that the act does not mention any such right. I disagree, as explained below, and would affirm the circuit court's order striking plaintiff's jury demand.[1]

---

[1] Although the circuit court struck a jury demand filed by a plaintiff in the case at bar, it would also have been proper to strike a jury demand if it had been filed by defendant.

I

The Whistleblowers' Protection Act states that "[a] court" is to render judgment. MCL 15.364; MSA 17.428(4). While I agree with the majority that judgment is rendered after a decision from a factfinder, and that the act is silent regarding before whom such a case is to be tried, I do not find this can be construed to give a right to a jury. Primarily this is because the Legislature, when it gives a specific right to a jury trial, states it plainly in the statute. The failure to mention the right to a jury here means that there is no right to a jury given in the act.

In analyzing the question at hand, there are, in my view, two groups of statutes that can facilitate analysis when used as parallels to the Whistleblowers' Protection Act. The first is where the Legislature refers to a court rendering judgment, and elsewhere expressly provides for a jury trial. See, e.g., MCL 128.156; MSA 8.146 (the "court shall . . . render judgment for the sum specified in the certificate signed by [the] jury"); MCL 426.12; MSA 18.222 ("the court or jury who shall try [suits under this act] or make an assessment of damages therein . . . shall . . . find the sum due the plaintiff . . . and the court shall render judgment in accordance with such finding"); MCL 570.447; MSA 26.387 ("the court shall render judgment . . . for all costs incurred in such said suit and for all damages which he may have sustained . . . to be assessed by the court or a jury, the same as in personal actions"); and MCL 73.17; MSA 5.1445 ("If judgment is not rendered . . . on account of errors of law or defects in the proceedings and if the appeal is not dismissed, the parties may proceed to trial by jury").

The second group of statutes simply states that a jury may hear a case. See, e.g., MCL 600.2922(6); MSA 27A.2922(6) ("in every action under this section the *court or jury* may award damages as the *court or jury* shall consider fair and equitable" [emphasis added]); MCL 436.22(4); MSA 18.993(4) ("in an action pursuant to this section, the plaintiff shall have the right to recover actual damages . . . in each case in which the *court or jury* determines" [emphasis added]); MCL 600.2916(1); MSA 27A.2916(1) ("[t]he amount of *damages shall be determined by a jury* as in other cases, or by the court in case a jury is waived by the parties" [emphasis added]); MCL 570.362; MSA 18.292 (in all suits prosecuted under the provisions of this act, the *court or jury* who shall try the same); MCL 462.259; MSA 22.1263(259) (a railroad company is not liable if it proves to the satisfaction of the *court or jury*); MCL 426.12; MSA 18.222 (in all suits prosecuted under the provisions of this act, the *court or jury* who shall try the same); and MCL 750.539h(c); MSA 28.807(8)(c) (any party to a conversation upon which eavesdropping is practiced shall be entitled to civil remedies including punitive damages as determined by the *court or by a jury*).

Importantly, in contrast with all these statutes, the Whistleblowers' Protection Act is conspicuously silent in not offering in any form the option of a jury trial. The central issue in this case is what significance this Court should give to this silence.

The proper performance of our judicial duties requires us, I believe, to give meaning to the silence. Indeed, exposition of this elementary rule of statutory construction can be found in a recent opinion of this Court where Chief Justice MALLETT stated it well:

> Courts cannot assume that the Legislature inadvertently omitted from one statute the language that it placed in another statute, and then, on the basis of that assumption, apply what is not there. In the instant case, the Legislature chose not to include such language, as it had on other occasions . . . . [T]his Court may not do on its own accord what the Legislature has seen fit not to do. [*Farrington v Total Petroleum, Inc*, 442 Mich 201, 210; 501 NW2d 76 (1993). (Citations omitted.)]

Thus, the Legislature's failure to mention that a jury may hear or award damages in a Whistleblowers' Protection Act lawsuit should be given its obvious meaning: The Legislature did not intend for there to be jury trials of Whistleblowers' Protection Act lawsuits.

The majority's holding runs afoul of the limitation on this Court's power recognized in *Farrington*, i.e., this Court may not do on its own what the Legislature has seen fit not to do.[2]

Under the majority's analysis, whenever the Legislature creates a new cause of action and allows a party to recover actual damages, without expressly indicating that a court is to award the damages, an intent to provide a jury trial will be found. This is a common-sense-defying approach, which effectively says, unless the Legislature says no, we can infer that it said yes. I know of no authorization for such a puzzling approach to interpreting statutes. The rule regarding statutes has always been and should continue to be: The Legislature must enact a measure for it to be stat-

---

[2] The majority rejects my analysis, claiming the Legislature also knows how to make a case triable only by a judge. The majority, however, is able to cite only one statute which states that a court is to award damages, in stark contrast with the numerous statutes that I have cited. Moreover, while I have noted numerous statutes expressly allowing a jury, the majority has not cited a single statute forbidding a jury.

utory law.[3] Without such a rule, statutes can be construed to say whatever courts want said whether the Legislature wanted it or not, to say nothing of the executive who might have vetoed the measure had it been known it would be construed in such a way. This is a usurpation of the Legislature's and the Governor's constitutionally granted powers that should not be engaged in by this Court.

The difficulty that the majority has in justifying its conclusion is seen first in its questionable reading of *Friend v Dunks*, 37 Mich 25 (1877),[4] for the proposition that a right to a jury can be found in a statute even though the statute does not expressly mention such a right. In my view, mine as they might, the gold the majority seeks from this case just is not there. First, there is no indication that whether a jury was available was even at issue in the case. Without such an indication, anything said was dicta. Moreover, absent explanation from the Court that makes it clear that the Court was using the silence of the Legislature to give the Court license to speak for it, one should be inclined to the more likely view that the jury right purportedly found in the statute instead traces to another source, perhaps even the constitution of that era.[5] Not to do so is to indulge in the historically difficult-to-defend notion that our constitutionally conservative nineteenth century predecessors on this

---

[3] See Const 1963, art 4, §§ 1 and 33.

[4] This is a tacit admission that this Court has not held, on a nonconstitutional basis, that a right to a jury trial exists for a cause of action in the last 120 years where no such right is contained in the express statutory language.

[5] It could be that there was a right to a jury trial in the case because Const 1850, art 6, § 27, which provided that the right to jury remain, just as Const 1963, art 1, § 14 does, required it. See part III.

bench were uncharacteristically engaged in creative expansions of their own powers that, while unfortunately too familiar to late twentieth century readers of the law, were all but unheard of a century ago.

Further, the majority claims *Lorillard v Pons*, 434 US 575; 98 S Ct 866; 55 L Ed 2d 40 (1978), supports its reading of a right to a jury trial into the act. *Lorillard* provides no such support. As explained in *Feltner v Columbia Pictures Television, Inc*, 523 US 340; 118 S Ct 1279; 140 L Ed 2d 438 (1998), the *Lorillard* holding was expressly premised on the fact that the Age Discrimination in Employment Act made explicit reference to another statute that had been uniformly interpreted to provide for a jury trial. Although the majority traces the Whistleblowers' Protection Act to the Civil Rights Act and the Fair Employment Practices Act, it nevertheless concedes, *ante*, p 547, that the Whistleblowers' Protection Act does not contain an explicit statement stating that Civil Rights Act procedures should be followed in actions brought under the Whistleblowers' Protection Act. Thus, *Lorillard* does not support the majority's position.

Rather than *Lorillard*, the majority should review *Feltner*. In *Feltner*, a plaintiff brought a civil action for damages under the Copyright Act. The defendant filed a jury demand. The Supreme Court held that the language of the statute did not grant a right to a jury trial because the statute did not mention the right to a jury trial or to juries at all. Indeed, the Court distinguished *Lorillard* on the basis that the Copyright Act did not make explicit reference to another statute. It held that the language of the statute did not grant a

right to a jury trial. A similar analysis should be applied in the case at bar.[6]

The majority also bases its finding of a jury right in the Whistleblowers' Protection Act to the fact that the act uses language similar to the CRA and the FEPA where both the CRA and the FEPA contain a right to a jury trial. The majority's analysis is flawed. First, as the majority acknowledges, the FEPA expressly allowed for a jury trial. *Ante*, p 548. In contrast, the Whistleblowers' Protection Act does not expressly contain such a right. Further, in contrast with the FEPA, the CRA does not contain an express mention of a right to a jury trial. Rather, the right to a jury trial under the CRA is premised on Const 1963, art 1, § 14, not express language in the CRA. See *King v General Motors Corp*, 136 Mich App 301, 308-309; 356 NW2d 626 (1984). The fact that the Court of Appeals held that a constitutional right to a jury exists in CRA actions is irrelevant to the question whether there is a nonconstitutional right to a jury under the Whistleblowers' Protection Act.

II

Having determined that a right to a jury trial is not available under the Whistleblowers' Protection Act, there is no need to determine whether a jury trial is available when a plaintiff sues a governmental defendant. However, if it was necessary to reach the issue, I would be inclined, consistent with the Court

---

[6] It is the case that, on an alternate basis, the Seventh Amendment to the United States Constitution, the Court held that the constitution required that a jury be provided. The Seventh Amendment, however, does not apply to the states, 47 Am Jur 2d, Jury, § 5, p 716, and therefore has no application to the case at bar.

of Appeals dissent, to apply the following analysis of the United States Supreme Court:

> [I]f Congress waives the Government's immunity from suit . . . the plaintiff has a right to a trial by jury only where that right is one of the "terms of [the Government's] consent to be sued." [*Lehman v Nakshian*, 453 US 156, 160; 101 S Ct 2698; 69 L Ed 2d 548 (1981).]

Even under the majority's analysis, "There is no express provision in the Whistleblowers' Protection Act specifying whether an action brought under it is to be tried before a jury or before a judge sitting without a jury," *ante*, p 535, it simply cannot be said that the Legislature consented to let a jury decide Whistleblowers' Protection Act lawsuits filed against governmental entities.[7] I note that the majority has not even attempted to distinguish the logic of *Lehman*.

III

Having determined that the Legislature has not provided that Whistleblowers' Protection Act actions are triable by a jury, it is necessary to reach the issue

---

[7] The majority states, "Nothing in the act suggests that the state is not to be treated the same as a business for purposes of the act's protection of non-civil service employees like the plaintiff." *Ante*, p 553. MCL 15.361(a); MSA 17.428(1)(a) provides that all state employees who are classified civil servants may not invoke the act. Hence, the majority's reference to non-civil service employees. I take judicial notice that over ninety percent of state workers are classified civil servants who cannot invoke the Whistleblowers' Protection Act against their employer, the state. Thus, contrary to the majority, *id.*, pp 553-554, there is no significance to the fact that the Legislature chose to subject the state to suit in the circuit court rather than the Court of Claims. Allowing those few state workers who are not classified civil servants to bring suit under the act in circuit court may have been merely an accommodation to allow suits to be heard in the county where the plaintiff resides or works rather than forcing such plaintiffs to try their case in Ingham County.

whether Const 1963, art 1, § 14, "The right of trial by jury shall remain," requires a jury trial for Whistleblowers' Protection Act lawsuits.

This Court has previously recognized that there was no common-law right to be free from being fired for reporting an employer's violations of law such as is recognized under the Whistleblowers' Protection Act. *Dudewicz v Norris Schmid, Inc*, 443 Mich 68, 78; 503 NW2d 645 (1993). Given this fact, art 1, § 14 does not provide a basis for finding that a right to a jury trial exists under the Whistleblowers' Protection Act. This is because a right that did not exist before the adoption of the constitution cannot be retained by this constitutional provision.[8] The following statement made regarding a predecessor of art 1, § 14 is applicable:

> [I]t is a different proceeding altogether from any which was known to our jurisprudence in 1850. It is a new proceeding, and therefore if a jury trial cannot be had in it, that method of trial is not *cut off*, but is simply *not given*. There is nothing in the Constitution which renders it necessary to provide for jury trial in new cases. The constitutional provision is, "the right of trial by jury shall *remain*," by which we are to understand merely that it is retained for cases in which it existed before. [*State Tax-Law Cases*, 54 Mich 350, 363; 20 NW 493 (1884) (emphasis in original).]

Given the fact that there was no common-law analogue of a Whistleblowers' Protection Act action, there could not have been a right to try such a nonexistent cause of action in front of a jury when art 1, § 14 was adopted in 1963. Therefore, art 1, § 14 did

---

[8] As defendant Michigan State University aptly states in its brief: "The idea of retaining that which did not previously exist poses an ontological dilemma of the first order."

not retain a right that did not then exist. In my judgment, the Court of Appeals majority clearly erred when it ruled to the contrary.

### CONCLUSION

Because the statute does not provide for a jury trial and art 1, § 14 does not require a jury trial, I would reverse the judgment of the Court of Appeals and affirm that of the trial court.

WEAVER, J., concurred with TAYLOR, J.