*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MARIAN ELDER,

              Plaintiff/Counterdefendant-Appellant,

v

BAKER'S PROPANE, INC.,

              Defendant/Counterplaintiff-Appellee.

UNPUBLISHED
February 13, 2026
9:52 AM

No. 373594
Lenawee Circuit Court
LC No. 2023-007168-NO

Before: RICK, P.J., and YATES and MARIANI, JJ.

PER CURIAM.

This action arises from a dispute over a propane tank and propane deliveries provided by defendant. Plaintiff appeals as of right an opinion and judgment entered following a bench trial. The trial court ruled in favor of defendant and dismissed plaintiff's complaint for no cause of action. We affirm.

## I. FACTUAL BACKGROUND

The procedural history is somewhat like a knotted ball of yarn that needs delicate untangling. Plaintiff is a self-represented litigant. In December 2021, she filed a small claims action against defendant in Lenawee District Court. As we can best discern, plaintiff alleged that defendant, a propane business, refused to continue providing her propane fuel. Defendant thereafter removed the small claims action to district court. During a January 2022 pretrial hearing, defendant agreed to make a final delivery of 300 gallons of propane to plaintiff, provided that she paid for the propane in advance. The parties later agreed on the record that defendant could pick up the propane tank from plaintiff's property. The district court case was dismissed in March 2022. Plaintiff thereafter prevented defendant's employees from retrieving the propane tank by blocking the tank with a fallen tree. Defendant alleged that it had yet to recover the propane tank and that plaintiff had sent defendant's employees a number of threatening letters.

In October 2022, plaintiff filed a complaint against defendant in Washtenaw Circuit Court. Plaintiff alleged that defendant breached its contract with her by refusing to deliver propane in October 2021. She claimed the defendant withheld the propane to damage and abuse her, causing

-1-

emotional distress and physical injury during freezing temperatures. Plaintiff sought damages of $12 million ($100,000 per day for 120 days) and clear title to the propane tank on her property.

Defendant denied the allegations and filed a counterclaim for conversion, asserting ownership of the 500-gallon propane tank on plaintiff's property. Defendant explained that it terminated business with plaintiff in November 2021 and notified her that the tank would be removed. As noted above, plaintiff thereafter prevented defendant's employees from retrieving the propane tank. Defendant alleged that it had yet to recover the propane tank and that plaintiff had sent defendant's employees a number of threatening letters. Defendant requested that the court enter a declaratory judgment ordering plaintiff to allow defendant access to the propane tank and further ordering her to cease all communications with defendant's employees.

Relevant to this appeal, plaintiff filed a demand for a jury trial in December 2022, but did not pay the required fee at that time. In August 2023, plaintiff filed a motion for change of venue. Defendant filed a motion to deny plaintiff's jury trial demand, arguing that the demand should be denied because plaintiff failed to pay the jury trial fee "at the time the demand was filed," in accordance with MCR 2.508(B)(1). The trial court thereafter entered an order denying plaintiff's jury trial demand and an order indicating that the parties had stipulated to transfer venue to Lenawee County.

In September 2023, plaintiff filed a jury trial demand in Lenawee Circuit Court. In October 2023, defendant moved to deny the jury trial demand, explaining that plaintiff had failed to pay the required fee along with her original jury trial demand in Washtenaw Circuit Court. Defendant additionally explained that the Washtenaw Circuit Court had already entered an order denying defendant's jury trial demand. Defendant argued that the change of venue did not revive plaintiff's right to a jury trial and asked that the court deny the request. In November 2023, the trial court entered an order denying plaintiff's jury trial demand. The trial court explained that the change of venue did not restart the clock on plaintiff's right to demand a jury trial, which had been extinguished when she failed to adhere to the court rules requiring payment of the jury fee at the time the demand was made.

The court held a bench trial in October 2024. Plaintiff testified that her husband, Daniel Honeycutt, had a contract with defendant for propane delivery. Plaintiff's husband had since passed away, and she admitted that she did not know anything about the terms of the contract with defendant. Plaintiff asserted that defendant stopped delivering propane, causing her to be without heat during winter 2021 and 2022. Plaintiff claimed that she was forced to use a wood stove for heat and that that the lack of adequate heating caused frozen pipes and water damage in her home. Despite her lack of knowledge about the terms of her husband's contract with defendant, plaintiff testified that she believed she had an implied contract with defendant. Plaintiff further testified that she believed the propane tank had been abandoned for four years and that she should be granted ownership of it. Regarding defendant's allegation that plaintiff had threatened defendant's employees, plaintiff testified that she had authorized her granddaughter to write letters to defendant, but denied making threats.

Eliot Parker, the store manager for defendant's Tecumseh, Michigan location, testified that defendant leases the propane tanks placed on their customers' properties. Parker testified that payment issues with Honeycutt's account began in 2019. He explained that the store would

generally deliver the propane prior to running a client's credit card. On several occasions, an employee would attempt to run plaintiff's credit cards following delivery, only to have the payments declined. Parker testified that, in February 2021, defendant made the decision to require plaintiff to prepay for propane. Defendant ultimately stopped delivering propane to plaintiff because she never prepaid for delivery after February 2021. Regarding the original contract with Honeycutt, Parker stated that defendant was unaware of Honeycutt's death until November 2021, when plaintiff filed the initial action in Lenawee District Court.

McKenna Klemz, defendant's attorney, testified that there was never an express or implied contract between plaintiff and defendant. She further explained that, in the district court action, defendant agreed to make one final delivery of propane to plaintiff, provided that she prepaid for it, and that plaintiff was then supposed to find a new propane delivery service. Klemz further stated that the district court ordered defendant's recovery of the propane tank, but plaintiff made recovery impossible by blocking access to the tank with obstacles, including a fallen tree. Klemz testified that she sent plaintiff a letter in June 2022 regarding the blocked access path to the propane tank. She also asserted that defendant had informed plaintiff that it would no longer be providing her with propane, pointing out that plaintiff had signed the dismissal papers in district court and agreed that defendant could remove the propane tank.

Following trial, the trial court entered an opinion and judgment dismissing plaintiff's claim against defendant. It found that no express contract existed between plaintiff and defendant. The court further found that no implied contract existed, as defendant was unaware of Honeycutt's death and had not mutually assented to an implied contractual arrangement with plaintiff. The court additionally held that there was no evidence to support plaintiff's claims of physical and emotional distress. Regarding defendant's counterclaim for conversion, the court concluded that defendant had not abandoned the propane tank. The court also agreed that plaintiff's behavior toward defendant had constituted harassment, noting that in her letters to defendant, plaintiff "accuse[d] Defendant of extortion, hate crimes, intimidation, discrimination, behaving like the mafia, behaving like Nazis, and behaving like terrorists." Accordingly, the trial court dismissed plaintiff's claims for no cause of action, ordered plaintiff to allow defendant to remove the propane tank from her property, and enjoined plaintiff from contacting defendant or defendant's employees.

Plaintiff thereafter moved for a new trial, but the court denied the motion, ruling that plaintiff had failed to establish grounds for a new trial under MCR 2.611(A)(1). This appeal followed.

## II. ANALYSIS

## A. JURY TRIAL

Plaintiff argues that the trial court erred by denying her demand for a jury trial. We disagree.

Whether a party is entitled to a jury trial is a question of law that this Court reviews de novo. *Anzaldua v Band*, 457 Mich 530, 533; 578 NW2d 306 (1998). We likewise review de novo

questions of statutory interpretation, including the interpretation of court rules. *Barretta v Zhitkov*, 348 Mich App 539, 549; 19 NW3d 420 (2023).

In her statement of the issue, plaintiff cites MCR 2.508, MCR 2.227, MCR 2.509, the Michigan Constitution, and "writ of Mandamus" to support her argument. In the body of the brief, she only cites MCR 2.508 and MCR 2.227. We will not address plaintiff's contention regarding MCR 2.509, the Michigan Constitution, or the writ of mandamus, given that plaintiff makes no effort to explain the relevance of these provisions or their application to this issue. See *Berger v Berger*, 277 Mich App 700, 712; 747 NW2d 336 (2008) ("A party abandons a claim when it fails to make a meaningful argument in support of its position."). We could also decline to address plaintiff's argument as to MCR 2.508 and MCR 2.227 for a similar reason—plaintiff recites the relevant court rules but makes no argument about the application of either one. We appreciate that self-represented litigants are entitled to a measure of leniency. *Hein v Hein*, 337 Mich App 109, 115; 972 NW2d 337 (2021). In our best interpretation of her claims, we infer that plaintiff believes the trial court erroneously interpreted MCR 2.508 and MCR 2.227. We will thus address plaintiff's argument regarding these provisions.

"The right to a jury trial in a civil action is permissive and not absolute." *Davis v Chatman*, 292 Mich App 603, 616; 808 NW2d 555 (2011). Under MCR 2.508(B)(1),

> [a] party may demand a trial by jury of an issue as to which there is a right to trial by jury by filing a written demand for a jury trial within 28 days after the filing of the answer or a timely reply. The demand for jury must be filed as a separate document. The jury fee provided by law must be paid at the time the demand is filed.

Under MCR 2.508(D)(1), "[a] party who fails to file a demand or pay the jury fee as required by this rule waives trial by jury." We interpret court rules "according to [their] plain language, giving each word and phrase its common, ordinary meaning." *Dawley v Hall*, 501 Mich 166, 169; 905 NW2d 863 (2018) (quotation marks and citation omitted). If there is no ambiguity in the language of the court rule, this Court "need only enforce the rule as written." *Lamkin v Engram*, 295 Mich App 701, 709; 815 NW2d 739 (2012). Here, there is no ambiguity in the language of MCR 2.508(B)(1) and (D)(1), which clearly state that both the timely filing of a written jury demand and payment of the jury fee are necessary to preserve the right to a jury trial. Plaintiff failed to timely pay the jury fee when she made her demand for a jury trial in Washtenaw Circuit Court. She thus waived her right to a jury trial.

Plaintiff nevertheless appears to contend that MCR 2.227 resets the clock on her jury trial demand. MCR 2.227(E)(3)[1] states:

---

[1] Plaintiff erroneously cites to MCR 2.227(B)(3). A review of the most recent version of MCR 2.227, effective January 1, 2023, indicates that the correct provision is MCR 2.227(E)(3). This version was in effect when the parties stipulated to the transfer of venue and when plaintiff made her demand for a jury trial in Lenawee Circuit Court.

A waiver of jury trial in the court in which the action was originally filed is ineffective after transfer. A party who had waived trial by jury may demand a jury trial after transfer by filing a demand and paying the applicable jury fee within 28 days after the filing fee is paid under subrule (D)(1). A demand for a jury trial in the court in which the action was originally filed is preserved after transfer.

Fatal to plaintiff's argument is the fact that MCR 2.227 applies only to transfers of venue based on the original court's lack of subject-matter jurisdiction.[2] MCR 2.227 does not apply to transfers by stipulation of the parties, as was the case here. Put differently, when parties stipulate to a change of venue, they are not invoking the jurisdictional transfer provisions of MCR 2.227. Thus, a stipulated transfer does not trigger the rule that makes prior waivers ineffective. Because plaintiff waived her jury trial right by failing to pay the fee in the original venue, and because the transfer was by stipulation rather than for lack of jurisdiction, the waiver remained effective in the new venue. Accordingly, the trial court properly applied the general waiver rule under MCR 2.508(B)(1). Plaintiff is not entitled to remand for a jury trial.

## B. ADMISSIBILITY OF EVIDENCE

Plaintiff next argues that the trial court erred by declining to admit two of her trial exhibits under MRE 401. She claims that she laid the proper foundation for their admission based on her personal knowledge of the exhibits' content. We disagree.

A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *Kuebler v Kuebler*, 346 Mich App 633, 653; 13 NW3d 339 (2023). An abuse of discretion occurs when the trial court chooses an outcome that falls outside the range of principled or reasonable outcomes. *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008). Evidentiary error in civil cases is generally considered harmless unless reversal "appears to the court inconsistent with substantial justice." *Campbell v Human Servs Dep't*, 286 Mich App 230, 246; 780 NW2d 586 (2009) (quotation marks and citation omitted).

Initially, we note that plaintiff misunderstands the purpose of MRE 401. That rule does not require the party seeking admission to lay a proper foundation. The requirement to lay a foundation typically pertains to establishing authenticity and competency, not to the relevancy inquiry as defined by MRE 401. See, e.g., MRE 104; MRE 901. Under MRE 401, evidence is relevant "if it has any tendency to make the existence of a fact that is of consequence to the action more probable or less probable than it would be without the evidence." MRE 401. A fact of consequence is a fact that "is within the range of litigated matters in the controversy." *Morales v State Farm Mut Auto Ins Co*, 279 Mich App 720, 731; 761 NW2d 454 (2008). Relevant evidence is generally admissible, except as otherwise provided by law, but evidence that is not relevant is not admissible. MRE 402.

---

[2] MCR 2.222 governs changes of venue when venue was otherwise proper and contains provisions regarding the forwarding of filing and jury fees. It does not contain the same language as MCR 2.227 regarding the effectiveness of waivers after the case is transferred.

During trial, plaintiff sought to admit two pieces of evidence, which she designates as Exhibits 2 and 3 on appeal. The lower court record contains three itemized exhibits. Exhibits 1 and 3 are designated as such. The middle exhibit has an evidence label, but is not numbered. Assuming that the exhibits are presented in chronological order, we assume that the second, unnumbered exhibit is plaintiff's Exhibit 2. For the sake of completeness, and in recognition that the law requires us to give leniency to plaintiff, we have reviewed all three documents contained in the lower court record. Exhibit 1 is a document alleging that the city of Dearborn, Michigan, "was an organized legal takeover" and stating that the city of Manchester, Michigan, "is built on a pyramid scam." The lower half of the document contains a photocopy of part of a news article from Manchester, Michigan, discussing a federal investigation into cybercrime. Exhibit 2 is a second photocopy of a news article from Manchester, Michigan, discussing the Village of Manchester's pursuit to be recognized as a city, rather than a village. Exhibit 3 is a photocopy of the title of a news article regarding pyramid schemes. It also contains a photo of a book discussing criminal pyramid schemes.

When plaintiff sought to admit these exhibits at trial, she was asked to explain their relevance to her claims against defendant. Plaintiff claimed that "homeland security and the FBI made arrests[,]" but when asked how that was related to her claim, plaintiff could not explain the connection. In what can at best be characterized as a perplexing exchange, plaintiff explained that she believed defendant was related to the alleged arrests detailed in her proposed exhibits because a "United Parcel Service man came into my driveway and threatened to hit me with the truck, and he was yelling at the neighbors . . . he was looking for the propane tank, and so I assume they [defendant] were part of this group." Plaintiff continued that some of the arrested parties were defendant's clients, but still could not explain the actual relevance of the evidence she sought to admit. Regarding Exhibit 2, plaintiff ultimately admitted that defendants "damaged my home and they did terrorize me, but I cannot relate them directly to this[,]" meaning the evidence presented in Exhibit 2. Regarding Exhibit 3, plaintiff additionally admitted that the only connection between the contents of the exhibit and her claim against defendant was the fact that defendant "came at the same time" as the pursuit for cityhood and "tried to get accounts set up" in the city at that time.[3] The court again declined to admit the evidence for lack of relevance.

The evidence concerning pyramid schemes and cybercrime failed the test for relevance under MRE 401because nothing in the documents proffered by defendant pertained to any fact of consequence regarding plaintiff's claims. Indeed, these topics were wholly unrelated to the contractual dispute at issue, as well as plaintiff's ensuing claims of physical and emotional distress. Accordingly, the trial court acted within its discretion under MRE 401 by excluding the evidence, as it was not relevant to plaintiff's claims against defendant.

---

[3] We again note that plaintiff's Exhibit 3 pertains to pyramid schemes. However, the discussion of Exhibit 3 at trial leads us to believe that plaintiff's Exhibit 2 from the record is what she erroneously identified as Exhibit 3 at trial. For that reason, we have elected to review and address all of the numbered exhibits in the record.

Affirmed.

/s/ Michelle M. Rick
/s/ Christopher P. Yates
/s/ Philip P. Mariani